UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PACIFIC LIFE INSURANCE COMPANY, *et al.*, | : : : | Case No. 1:15-cv-416 |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : : | |
| vs. | : : | |
| U.S. BANK NATIONAL ASSOCIATION, *et al.*, | : : : : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE**

This civil action is before the Court on Defendants' Motion to Transfer Venue (Doc. 19) and the parties' responsive memoranda (Docs. 25, 27, 28, 29).

I.   FACTUAL BACKGROUND AS ALLEGED BY PLAINTIFFS

Plaintiffs, Pacific Life Insurance Company and Pacific Life & Annuity Company, are insurance companies incorporated in Nebraska and Arizona, respectively, each with a principal place of business in California. (Compl. ¶¶ 15-16). Defendants, U.S. Bank and Bank of America, are national banking associations with their main offices in Ohio and North Carolina, respectively. (Compl. ¶¶ 17-18). This dispute arises from Defendants' role as trustees for 32 securitization trusts. (Compl. ¶ 1). The trusts at issue consist of residential mortgages of properties in virtually every U.S. state, including over 700 properties in Ohio. (Doc. 25 at 3). Securitized trusts are created through a process whereby mortgage loans are acquired from their originators and pooled together into

tranches, which each carry different levels of risk and reward. (Compl. ¶¶ 25, 30). Investors may then purchase certificates in the residential mortgage-backed securities ("RMBS"), which represent interest in the cash flow from principal and interest payments on the pooled loans. (Compl. ¶ 25). Plaintiffs became beneficiaries of the trusts ("certificateholders") by purchasing RMBS certificates worth $900 million. (Compl. ¶¶ 3-4).

Contracts called pooling and servicing agreements ("PSAs") govern the administration of the trusts. (Compl. ¶ 7). The PSAs are binding contracts between the trustees, sponsors, depositors, the master servicer, and mortgage loan servicers. (Compl. ¶ 660). Pursuant to the PSAs, the servicers, on behalf of the Defendants, were to monitor delinquent borrowers, ensure compliance with representations and warranties, track mortgage documentation, and manage foreclosed properties. (Compl. ¶ 28). The trustees were responsible for delivering monthly remittance reports to the certificateholders describing the performance of the underlying loans and compliance with the PSA. (Compl. ¶ 29). A financial institution served as a sponsor for each trust. (Compl. ¶ 2). These sponsors were to convey loans to the depositor, who in turn conveyed them to Defendants in their capacity as trustees, to hold for the benefit of the certificateholders. (Compl. ¶ 37). Because the cash flow from borrowers' payments on the underlying mortgages alone funded the payout to the certificateholders, the credit quality of the underlying loans was crucial. (Compl. ¶ 31).

The PSAs sought to ensure that only qualifying loans would be deposited into the trusts by requiring that the key documents for the loans were included in the mortgage files.  (Compl. ¶¶ 4, 9).  Defendants were obligated to identify and report loans whose files were incomplete so that they could be removed from the pools, and to ensure that the relevant sponsors and originators substituted the loans within a certain timeframe.  (Compl. ¶¶ 9, 11, 46-48).  The PSAs relevant to 22 of the 32 trusts contained New York choice of law provisions.  (Doc. 19-4 at 1-3).  The remaining 10 PSAs contained Delaware choice of law provisions.  (*Id.*)

Plaintiffs allege that Defendants, acting as trustees, owed Plaintiffs and the other certificateholders certain contractual duties under the PSAs, common law fiduciary duties, and statutory duties under the Trust Indenture Act of 1939 ("TIA"), 15 U.S.C. § 77aaa, *et seq.*, and New York's Streit Act, N.Y. Real Property Law § 124, *et seq.* (the "Streit Act").[1]  (Compl. ¶¶ 1, 7).  Plaintiffs allege that the Defendants have breached their duties to protect the rights of Plaintiffs in five ways, causing Plaintiffs to suffer over $150 million in damages.  (Compl. ¶ 14).

Plaintiffs first allege that Defendants failed to act in Plaintiffs' interests because they did not remove defective loans from the mortgage pools comprising the trusts, and thus failed to avoid default.  (Compl. ¶ 6).  Second, Plaintiffs allege that Defendants

---

[1] The Streit Act is the New York state law version of the TIA which applies to trusts that fall outside of the TIA.  *See Retirement Bd. of the Policemen's Annuity and Benefit Fund of the City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154 (2d Cir. 2014); *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, No. 1:14-cv-08175-SAS, 2015 WL 3466121, at *14 (S.D.N.Y June 1, 2015).

3

failed to provide notice of breaches of sponsor and originator representations and warranties regarding the quality of the mortgage loans. (Compl. ¶¶ 10, 48). Third, Plaintiffs allege that Defendants failed to exercise due care to avoid conflicts of interest as required under common law, the TIA, and the New York Streit Act. (Compl. ¶ 11). Fourth, Plaintiffs allege that Defendants negligently failed to provide accurate certifications and remittance reports where required under the PSAs or applicable federal law. (Compl. ¶ 12). Finally, Plaintiffs allege that Defendants failed to address the servicers' failure to meet prudent servicing standards. (Compl. ¶ 13).

Defendants do not contend that venue in this Court is improper. Instead, Defendants seek to transfer venue to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), arguing that the Southern District of New York is a more convenient forum for resolution of this matter. Defendants maintain that transfer to that District is appropriate because three similar cases, involving nearly identical theories of liability, the same Defendants, some of the same RMBS trusts, and overlapping discovery, are pending there.

## II. STANDARD OF REVIEW

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of the transfer is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public

against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The moving party bears the burden to establish a need for transfer.  *Kay v. Nat'l City Mortg. Co.,* 494 F. Supp. 2d 845, 849-850 (S.D. Ohio 2004) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)).  District courts have wide discretion in deciding motions to transfer.  *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

Transfer under § 1404(a) turns on a two-pronged test: (1) whether the plaintiff could have brought the action in the transferee court; and (2) whether, on balance, the considerations of the parties and the interests of justice favor transfer.  *Kay*, 494 F. Supp. 2d at 849-50.  Courts consider case-specific factors concerning the private interests of the parties, as well as public interests, to determine whether a transfer is consistent with § 1404(a).  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988).  The balance of convenience, considering all the relevant factors, should strongly favor transfer before such will be granted.  *Kay*, 494 F. Supp. 2d at 850.

Considerations under § 1404(a) are similar to those in a *forum non conveniens* analysis, but transfers pursuant to § 1404(a) may be granted "upon a lesser showing of inconvenience."  *Bartell v. LTF Club Operations Co.*, No. 2:14–cv–0040, 2015 WL 770341, at *5 (S.D. Ohio Feb. 23, 2015) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).[2]

---

[2] *See also Bunting v. Gray*, 2 F. App'x 443, 448 (6th Cir. 2001) (noting that a district court has broader discretion in a § 1404(a) decision than under the doctrine of *forum non conveniens*).

5

## III. ANALYSIS

### A. Whether this action could have been brought in the Southern District of New York

The threshold issue under § 1404(a) is whether the action could have been brought in the transferee court. *Sky Tech. Partners LLC v. Midwest Research Inst.*, 125 F. Supp. 2d 286, 291 (S.D. Ohio 2000). An action might have been brought in the transferee court if: (1) the transferee court has jurisdiction over the subject matter of the action; (2) venue is proper in the transferee court; and (3) the defendants are amenable to process issuing out of the transferee court. *Id.*

Here, each of these elements is satisfied. The Southern District of New York would have diversity jurisdiction over this action since the parties are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000. 28 U.S.C. § 1332(a). In addition, the Southern District of New York would have original jurisdiction under 28 U.S.C. § 1331 over the TIA claims, as well as supplemental jurisdiction over the other claims relating to the trusts to which the TIA applies. (*See* Compl. ¶ 20). Moreover, Defendants do not dispute personal jurisdiction in New York in this case. Venue is therefore also proper in the Southern District of New York. *See* 28 U.S.C. § 1391(b)(1), (c)(2).[3]

---

[3] Plaintiffs do not address the threshold issue of whether this action could have been brought in the Southern District of New York. Instead, they contend that the issue is moot because Defendants cannot demonstrate that the private and public factors weigh heavily in favor of transferring the action. (Doc. 25 at 12).

**B.     Public interest factors**

Having found that the threshold requirement for transfer is satisfied, the Court must next determine whether the balance of public and private interest factors weighs strongly in favor of transfer.  Public interest factors include, but are not limited to, "the pendency of related litigation in another district, judicial economy, the transferee judge's familiarity with the facts and circumstances of the case, and the need to promote the fair and consistent resolution of related cases."  *Stewart v. Chesapeake Exploration, LLC*, No. 2:12–CV–270, 2012 WL 3151255, at *4 (S.D. Ohio Aug. 2, 2012).  Consideration of these factors allows a court to avoid investing "*substantial* time and effort to adjudicate th[e] controversy when even a portion of that labor may be duplicative of the work" already undertaken by another judge.  *Fed. Ins. Co. v. CVS Revco D.S., Inc.,* No. 1:05 CV 1767, 2009 WL 1707898, at *5 (N.D. Ohio June 16, 2009) (emphasis in original).[4]

Where a party seeks transfer because related cases are pending in the transferee court, the claims need not be completely duplicative; transfer is supported if the claims present the same "central issue."  *Stewart*, 2012 WL 3151255, at *4 (citing *Ltd. Serv. Corp.,* No. 2:09-cv-1025, 2010 WL 2105362, at *6 (S.D. Ohio May 25, 2010)).  This factor is granted considerable weight: "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the

---

[4] *See also Pullins v. Palmero,* No. 3:08-cv-00118, 2009 WL 1067315, at *4 (S.D. Ohio April 21, 2009) ("The fact that consolidating all three actions in a single venue would help to avoid a multiplicity of litigation is an important factor weighing in favor of the requested transfer.") (internal quotations omitted).

interests of justice." *Proctor & Gamble Co. v. Team Techs. Inc.*, No. 1:12-CV-552, 2012 WL 5903126, at *7 (S.D. Ohio Nov. 26, 2012) (quoting *In re Volkswagen of Am., Inc.,* 566 F.3d 1349, 1351 (Fed. Cir. 2009)).

The Court finds that the public interest factors strongly favor transfer of this case. Since 2012, Judge Katherine Forrest of the Southern District of New York has been presiding over RMBS cases filed against the same Defendants that involve the same causes of action, the same theories of liability, and several of the same trusts.[5] Plaintiffs' lead counsel, located in New York, also represents the plaintiffs in two of the pending New York RMBS cases.

In the interest of efficiency, Judge Forrest has handled these lawsuits in coordination with one another.[6] Each of these actions filed against Defendants have been designated as related to an earlier RMBS case already pending before Judge Forrest.

---

[5] These are *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-10116 (S.D.N.Y.) ("*Phoenix Light*"), *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-09928 (S.D.N.Y.) ("*NCUA*"), and *Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-09401 (S.D.N.Y. July 2, 2015) ("*BlackRock*"). A fourth case, *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-2865 (S.D.N.Y.) ("*Policemen's Annuity*"), settled in March 2015.

[6] U.S. Bank has also been sued in three other RMBS cases pending or recently settled in the Southern District of New York in front of other judges, including one lawsuit that Plaintiffs' lead counsel filed after the instant litigation. *See Fed. Deposit Ins. Corp. v. U.S. Bank Nat'l Ass'n*, No. 1:15-cv-06570 (S.D.N.Y. Aug. 19, 2015); *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, No. 1:14-cv-02590 (S.D.N.Y. Apr. 11, 2014); *Okla. Police Pension & Ret. Sys. v. U.S. Bank Nat'l Ass'n*, No. 1:11-cv- 08066 (S.D.N.Y. May 15, 2012). U.S. Bank has also been sued on a similar theory in the New York Supreme Court. *BlackRock Balanced Capital Portfolio (FI) v. U.S. Bank Nat'l Ass'n*, No. 652204/2015 (N.Y. Sup. Ct. June 19, 2015).

(Doc. 19-5 at 425, 540, 616).[7] Judge Forrest has ordered joint conferences with the parties in each case. (*Id.* at 429, 555, 618). She has also coordinated their pleading and motion practice. (*Id.* at 428, 555, 619).

In light of the commonalities between these cases, the Court agrees that transfer would allow further coordination in discovery and scheduling. The savings in time and resources are considerable because 10 of the 32 trusts at issue here are involved in cases either still pending before Judge Forrest, or recently settled. (Doc 1-1). For the trusts involved in ongoing litigation, proofs and witnesses will likely be identical.[8] While it is no longer possible to coordinate discovery with the recently settled case, Judge Forrest retains familiarity with the facts and circumstances surrounding these trusts from overseeing two years of litigation surrounding their administration. (Doc. 19-5 at 215-

---

[7] These docket entries linked *NCUA*, *Phoenix Light*, and *BlackRock* with *Policemen's Annuity*. *See* Dec. 30, 2014 ECF Entry, Doc. 19-5 at 425; Dec. 11. 2014 ECF Entry, *id.* at 540; and Jan. 8, 2015 ECF Entry, *id.* at 616.

[8] The instant action shares two trusts with ongoing litigation. Defendants claim that there are three trusts involved in both *NCUA* and this case: BAFC 2007-D, WAMU 2006-AR2, and WAMU 2006-AR16. However, in its second verified derivative amended complaint, Plaintiffs state in a footnote that they do not assert any claims against Bank of America with respect to several trusts. One of these is BAFC 2007-D, though it appears in Plaintiffs' Exhibit A, in which it purports to list all involved trusts. (Doc. 19-5 at 87 n.1; Doc. 19-5 at 399-405). For the purposes of this order, the Court will consider only the two WAMU trusts that appear in Exhibit A and not BAFC 2007-D, which is excluded by reference in the second verified derivative amended complaint.

318).⁹  Similarly, having presided over RMBS cases filed against these Defendants since 2012, Judge Forrest is familiar with the same issues, causes of action, and theories of liability presented here.

Finally, the Southern District of New York has a strong interest in interpreting the laws of the state in which it sits.  New York law governs many, if not all, of the claims for 22 of the 32 trusts at issue.  Indeed, Plaintiffs allege claims under New York's Streit Act.  Plaintiffs also acknowledge that the PSAs for 22 of the 32 trusts contain New York choice of law provisions, so the breach of contract claims for those trusts likely will be governed by New York law.  (Doc. 25 at 22).  Plaintiffs further acknowledge that New York law may apply to those trusts in the event that the TIA does not apply.  (*Id.* at 25).  Thus, this factor also weighs in favor of transferring the action to New York.  *Gosiger, Inc. v. Elliott Aviation, Inc.*, No. 3:13-cv-267, 2013 WL 6062920, at *3 (S.D. Ohio Nov. 18, 2013).

## C.    Private interest factors

The Court finds that the private interest factors likewise strongly favor transfer.  In assessing the private interests of the parties, a court balances "all relevant factors" to determine whether "the litigation would more conveniently proceed . . . by transfer to a

---

⁹ The eight trusts this action has in common with *Policemen's Annuity*, which has been settled, are WAMU 2006-AR8, WAMU 2006-AR16, WAMU 2006-AR18, WAMU 2007-HY1, WAMU 2007-HY2, WAMU 2007-HY3, WAMU 2007-HY4, and WAMU 200-HY7.  Of those, one trust (WAMU 2006-AR16) overlaps with *NCUA* also. (Doc 19-5 at 161-162).

different forum." *Slate Rock Constr. Co. v. Admiral Ins. Co.*, No. 2:10-cv-1031, 2011 WL 3841691, at *6 (S.D. Ohio Aug. 30, 2011). Private interests include the convenience of the parties, the convenience of the witnesses, the relative ease of access to sources of proof, and "other practical problems that make trial of the case easy, expeditious, and inexpensive." *Jamhour*, 211 F. Supp.2d at 945 (citing *Norwood*, 349 U.S. at 32). In weighing private interests, "[t]he convenience of witnesses is considered to be of utmost importance." *Kay*, 494 F. Supp. 2d at 852.

Many non-party witnesses in this case are in New York: 10 of the 44 entities involved are incorporated there, and 14 of the 44 have either their principal place of business or their headquarters there. (Doc 19-5 at 413). By contrast, two of the 44 entities are incorporated or have their headquarters in Ohio. (*Id.*) The non-party witnesses located outside New York will likely need to appear there in relation to the RMBS cases already pending in New York: 36 of the 44 entities involved in this case as sponsors, originators, servicers, or depositors are also parties under the trusts at issue in Judge Forrest's RMBS cases against Defendants, and are likely to be witnesses in those actions. (Doc. 19-5 at 411). Transfer of this action to New York will enable the parties

to coordinate depositions and document discovery from these witnesses.[10]

Plaintiffs contend that their choice of forum in Ohio is entitled to great deference and should be preserved. Defendants argue that Plaintiffs' choice of forum bears no connection to the controversy and therefore warrants no deference. Although a plaintiff's choice of forum is generally entitled to substantial weight, "this factor is not dispositive." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998) (citing *DeMoss v. First Artists Prod. Co.,* 571 F. Supp. 409, 413 (N.D. Ohio 1983)). Where "the plaintiff chooses a forum that is not his residence, this choice is given less consideration." *Kay*, 494 F. Supp. 2d at 850. Likewise, "[w]here the cause of action has little connection with the chosen forum, the Plaintiff's choice of forum is to be given less weight than such choice would be given otherwise." *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902-03 (S.D. Ohio 2013) (citation omitted).

Here, neither Plaintiff resides or maintains its principal place of business in Ohio.[11] Moreover, the Court agrees that the causes of action in this case have little

---

[10] Plaintiffs argue that Defendants have failed to identify witnesses, describe the nature of their testimony, or show how they would be inconvenienced. (Doc. 25 at 16). However, "[u]nder Sixth Circuit precedent, a moving party is not required to specifically provide the names of witnesses to be used in an action to establish inconvenience. Instead, the party must provide enough information to enable the trial court to balance the parties' interests." *Cescato v. Anthem, Inc.*, No. 1:05 CV 2004, 2005 WL 3487974, at *3 (N.D. Ohio Dec. 21, 2005) (citing *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 615 (6th Cir. 1984)) (internal quotation omitted). Here, under the less stringent standard of § 1404(a), Defendants have met this burden by identifying categories of witnesses and their location, as well as identifying offices where the trusts are administered. *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981) (even under the more onerous *forum non conveniens* standard, the moving party need not provide affidavits identifying witnesses and the testimony the witnesses would provide, as "[s]uch detail is not necessary.")

connection to Ohio.  The only factors Plaintiffs identity in support of an Ohio connection are U.S. Bank's Ohio residency and the fact that some mortgages in the trusts at issue originated in Ohio.  Notably, however, a much greater number of mortgages in the trusts originated in New York than in Ohio.

Additionally, there is no convenience gained from the fact that U.S. Bank's main office is in Ohio because none of U.S. Bank's relevant witnesses are located there.  The relevant U.S. Bank corporate trust offices—where witnesses and proofs are likely to be—are located in New York, Delaware, Illinois, Massachusetts, and Minnesota.  (Doc. 19-2 at 2-3).  Bank of America's involvement in this dispute also lacks a meaningful connection to Ohio: before U.S. Bank acquired Bank of America's securitization trust administration business, it was based in Illinois, with one employee telecommuting from Ohio.  (Doc. 19-6 at 2).  Furthermore, Defendants' location is "potentially significant for present purposes only to the extent that it implicates other factors" at issue in the litigation.  *Kay*, 494 F. Supp. 2d at 851.  The existence of mortgages and the actions of servicers in Ohio are not essential to Plaintiffs' claims; instead, the dispute arises from Defendants' alleged breaches of contractual, statutory, and fiduciary duties under trust agreements that select New York law for 22 of the trusts and Delaware law for the remaining 10.  (Doc. 19-4 at 2-4).

---

[11] For this reason, Plaintiffs' reliance on *Western & Southern Life Ins. Co. v. Deutsche Bank Nat'l Trust Co.*, No. A151580, slip op. (Ohio Ct. Com. Pl. Nov. 5, 2015) is misplaced.  In addition, the court in *Western & Southern Life Ins. Co.* denied a motion to dismiss based on *forum non conveniens*, which is inapplicable to Defendants' motion.

13

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, the Court exercises its discretion in the interest of convenience and fairness and **GRANTS** Defendant's Motion to Transfer Venue.  (Doc. 19).  This case is hereby transferred to the United States District Court for the Southern District of New York, and the Clerk shall act accordingly.

**IT IS SO ORDERED**.

Date:  1/19/15                                                            <u>*s/ Timothy S. Black*</u>
                                                                                    Timothy S. Black
                                                                                    United States District Judge