UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                               :     **No. 16-cv-00555 (PGG)**
                                               :
**PACIFIC LIFE INSURANCE COMPANY,** *et al.*, :
                                               :     **Hon. Paul G. Gardephe**
              **Plaintiffs,**                 :
                                               :     **ECF CASE**
              **v.**                           :
                                             :
**U.S. BANK NATIONAL ASSOCIATION,** *et al.* :
                                             :
              **Defendants.**               :
                                             :
------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF U.S. BANK NATIONAL
<u>ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................... iii

ARGUMENT ............................................................................................................... 1

I.   PLAINTIFFS' BREACH-OF-CONTACT CLAIMS MUST BE DISMISSED ................ 1

    A.   Plaintiffs Fail to State a Claim Based on Alleged Pre-Event of
        Default Duties to Putback Loans for Representation and Warranty
        Breaches ....................................................................................................... 1

        1.   Plaintiffs fail to allege that U.S. Bank discovered
             loan-specific breaches of representations and warranties .......................... 1

        2.   For certain trusts, U.S. Bank had no duty to give notice
             or enforce repurchase rights for representation and
             warranty breaches ..................................................................................... 4

    B.   Plaintiffs Fail to Allege Breach of Alleged Pre-Event of Default Duties
        Relating to Missing or Defective Documents .................................................. 6

    C.   Plaintiffs' Pre-Event of Default Claim Based on Failure to Give
        Notice of Alleged Servicer and Master Servicer Breaches Fails .................... 7

    D.   Plaintiffs' RegAB Claim Must Be Dismissed ................................................ 8

    E.   Plaintiffs Fail to Allege Breach of Post-Event of Default Duties .................... 8

        1.   Plaintiffs fail to plead an Event of Default under the
             PSAs or SSAs ......................................................................................... 9

             (a)   Plaintiffs fail to plead the requisite written notice
                 and failure to cure and, for 26 trusts, cannot rely on
                 the prevention doctrine ................................................................. 9

             (b)   Plaintiffs cannot rely on "automatic" EODs ................................. 11

             (c)   Plaintiffs fail to plead the requisite master servicer
                 breach ......................................................................................... 11

        2.   Plaintiffs fail to allege depositor or Indenture EODs ............................... 12

        3.      Plaintiffs fail to plead actual knowledge or written notice of an EOD ................................................................................12

   F.     No-Action Clauses Bar Plaintiffs' Claims For Six Trusts ....................................12

II.     PLAINTIFFS' REMAINING CLAIMS ALSO MUST BE DISMISSED .......................13

III.    MANY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED ...........................................14

CONCLUSION ......................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Amies v. Wesnofske*,
   174 N.E. 436 (N.Y. 1931)....................................................................................10

*Bakal v. U.S. Bank Nat'l Ass'n*,
   2018 WL 1726053 (S.D.N.Y. Apr. 2, 2018),
   *appeal filed*, No. 18-1320 (2d Cir. May 3, 2018) ..................................................13

*Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*,
   2013 WL 3146824 (S.D.N.Y. June 19, 2013) ..........................................................3

*Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*,
   2015 WL 2359319 (S.D.N.Y. May 18, 2015) ...........................................................7

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank,
   Nat'l Ass'n*,
   2017 WL 3610511 (S.D.N.Y. Aug. 21, 2017)........................................................3, 4

*Casey v. Merck & Co.*,
   653 F.3d 95 (2d Cir. 2011)......................................................................................15

*Commerce Bank v. Bank of New York Mellon*,
   35 N.Y.S.3d 65 (1st Dep't 2016) ........................................................................3, 12

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
   277 F. Supp. 3d 483 (S.D.N.Y 2017)..................................................................12, 13

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992)....................................................................................13

*Felske v. Hirschmann*,
   2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) .....................................................5, 8, 14

*Fixed Income Shares: Series M v. Citibank, N.A.*,
   69 N.Y.S.3d 288 (1st Dep't 2018) ...............................................................9, 10, 11

*Hatfield v. Halifax PLC*,
   564 F.3d 1177 (9th Cir. 2009) ................................................................................15

*In re Bankers Tr. Co.*,
    450 F.3d 121 (2d Cir. 2006)............................................................10, 11

*Medtech Prods., Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)...................................................8

*Pac. Life Ins. Co. v. Bank of N.Y. Mellon*,
    2018 WL 1382105 (S.D.N.Y. Mar. 16, 2018) ..................................9, 10

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*,
    2017 WL 3973951 (S.D.N.Y. Sept. 7, 2017)....................................4, 14

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2018 WL 1088020 (S.D.N.Y. Feb. 12, 2018).....................................3, 6

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015)...................................................6

*Sterling Fed. Bank, F.S.B. v. Bank of N.Y. Mellon*,
    2012 WL 3101699 (N.D. Ill. July 30, 2012)........................................13

*Taylor v. First Resolution Inv. Corp.*,
    72 N.E.3d 573 (Ohio 2016) .......................................................6, 9, 14, 15

*Thor Props., LLC v. Chetrit Grp. LLC*,
    936 N.Y.S.2d 196 (1st Dep't 2012) .......................................................9

*U.S. Bank Nat'l Ass'n v. UBS Real Estate Sec. Inc.*,
    205 F. Supp. 3d 386 (S.D.N.Y. 2016)..................................................3, 4

*UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*,
    793 F. Supp. 448 (S.D.N.Y. 1992).......................................................11

**STATUTES**

Ohio Rev. Code Ann. § 2305.03(B) ........................................................14

Trust Indenture Act, 15 U.S.C. §§ 77aaa-77bbbb....................................
    15 U.S.C. § 77ooo(b) .......................................................................13
    15 U.S.C. § 77ooo(c) .......................................................................14
    15 U.S.C. § 77ppp(b) .......................................................................14

iv

**OTHER AUTHORITIES**

70 Fed. Reg. 1506-01 ..........................................................................................................8

Plaintiffs' Opposition to U.S. Bank's Motion is a virtual non-response.  Plaintiffs respond to arguments U.S. Bank never made, ignore many arguments U.S. Bank did make, and repeatedly mischaracterize U.S. Bank's position.  The central problems with their Amended Complaint remain.  Their pre-Event of Default ("EOD") claims are based on "watchdog" and investigation duties absent from—and, indeed, expressly disclaimed by—the agreements.  Their post-EOD claims cannot proceed in the face of recent First Department authority—binding on this Court and controlling over contrary (and, for the most part, earlier) decisions from this district—rejecting the same theories advanced here.  And their non-contract and statutory claims have been rejected by decisions in this district with increasing regularity.  For these reasons and those set forth in U.S. Bank's Motion and below, the Amended Complaint should be dismissed.

## ARGUMENT

## I.   PLAINTIFFS' BREACH-OF-CONTRACT CLAIMS MUST BE DISMISSED.

Each of Plaintiffs' five contract claims—(i) pre-EOD claims concerning alleged seller and originator representation and warranty ("R&W") breaches, (ii) pre-EOD claims based on allegedly incomplete mortgage files, (iii) pre-EOD claims based on alleged servicer and master servicer breaches, (iv) pre-EOD RegAB claims, and (v) post-EOD claims—must be dismissed.

### A.   Plaintiffs Fail to State a Claim Based on Alleged Pre-Event of Default Duties to Putback Loans for Representation and Warranty Breaches.

Plaintiffs claim U.S. Bank breached an alleged duty to give notice of seller breaches of R&Ws relating to loan underwriting.  Plaintiffs also say U.S. Bank failed to enforce sellers' obligation to repurchase or replace loans with these breaches.  These claims must be dismissed.

#### 1.   Plaintiffs fail to allege that U.S. Bank discovered loan-specific breaches of representations and warranties.

U.S. Bank's notice and enforcement duties arise, if at all, only upon U.S. Bank's "discovery" of specific breaches as to specific loans.  Mot. 8.  Plaintiffs' own pleading describes

1

how the trustee can discover loan-specific breaches—through its own "forensic review" at the direction of holders, or through its receipt of the results of another party's "forensic loan level review" or "re-underwriting of loan files." Mot. 9. Plaintiffs, however, do not allege that these things happened as to any loans in any trusts at issue here, or that U.S. Bank took any other action by which it would have discovered a breach in a particular loan. Plaintiffs thus fail to allege facts to plausibly suggest that U.S. Bank discovered loan-specific breaches in trusts here.

Plaintiffs' primary response is to address arguments U.S. Bank never made. Plaintiffs protest that, at the pleading stage, they need not allege (i) actual knowledge of breaches, (ii) breaches of particular R&Ws, or (iii) particular deficiencies of a particular loan. Opp'n 4-5. But U.S. Bank never argued that Plaintiffs needed to allege these things in the complaint. Nor does it matter for purposes of this Motion whether "discovery" equates with "actual knowledge." Opp'n 5-6. What matters is that Plaintiffs (i) acknowledge that a forensic investigation is required to discover loan-level breaches, (ii) under the plain terms of the agreements, cannot allege that U.S. Bank had a duty to perform such an investigation, and (iii) do not allege that U.S. Bank did a forensic investigation (or that someone else investigated and provided the results to U.S. Bank).

Plaintiffs' remaining arguments are unconvincing. Plaintiffs begin with one of many misstatements about the agreements—that any ambiguity must be "construed against" U.S. Bank because it "had an absolute right to amend them." Opp'n 3, 6. Plaintiffs, tellingly, cite nothing in the PSAs that supports their view. Quite the contrary, Plaintiffs have it backwards—the PSAs include their own built-in canon of construction that requires silence or ambiguity to be resolved against imposing a trustee duty, *i.e.*, in *favor* of the trustee. *See, e.g.*, Ex. F §§ 9.01, 9.01(a); Ex. G § 8.02(a)(iii). The PSAs provide that U.S. Bank has only those duties expressly and specifically set forth in the agreements, no implied duties, and no obligation to exercise rights or

powers that are not expressly set forth as duties. *See id.*

Next, Plaintiffs recite their allegations about publicly available information and pervasive breaches, claiming they have alleged enough. Opp'n 6-7. But U.S. Bank already explained why Plaintiffs cannot rely on inquiry notice plus a duty to investigate to plead discovery—the agreements are clear that U.S. Bank has no duty to investigate suspected breached unless holders direct and indemnify it to do so. Mot. 10-11. Plaintiffs do not dispute that this is what the agreements say. Instead, Plaintiffs point to cases purportedly finding a trustee duty to "nose to the source" even after *Commerce Bank v. Bank of New York Mellon*, 35 N.Y.S.3d 63 (1st Dep't 2016). Opp'n 8 & nn.34, 35. Respectfully, these decisions ignore not just *Commerce Bank*'s command, but the *PSAs'* command that the trustee has no pre-EOD duty to investigate.

Plaintiffs also assert that "[d]iscovery means 'knows or should know that the breach occurred,'" relying on *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 2013 WL 3146824, at *19 (S.D.N.Y. June 19, 2013). Opp'n 5 & n.19. But as a court in this district recently held, that case "did not even consider the duties of an RMBS trustee to RMBS investors, much less hold that the PSA governing that relationship required the trustee to investigate." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1088020, at *4 (S.D.N.Y. Feb. 12, 2018). And cases addressing RMBS trustee duties are clear that discovery means more than constructive knowledge. *E.g.*, *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 3610511, at *7-10 (S.D.N.Y. Aug. 21, 2017).

Nor do Plaintiffs plausibly plead willful blindness. All Plaintiffs muster are constructive-knowledge allegations. *See* Opp'n 7 & n.29. But willful blindness and constructive knowledge are not the same. *Blackrock v. Wells Fargo*, 2017 WL 3610511, at *7-10. *U.S. Bank Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386 (S.D.N.Y. 2016) is not to the contrary. Opp'n

3

8.  Not only did the court there not address trustee knowledge, but it made plain that constructive knowledge is not the same as willful blindness.  *UBS*, 205 F. Supp. 3d at 424-25.  In any event, Plaintiffs' own allegations undermine their willful-blindness theory.  Plaintiffs allege that when U.S. Bank discovered breaches it took action, including by filing putback actions and proofs of claims.  Am. Compl. ¶¶ 97-100.  That is the opposite of seeking "to deny knowledge" characteristic of willful blindness.  *See Blackrock v. Wells Fargo*, 2017 WL 3610511, at *10.

Plaintiffs point to cases upholding constructive-knowledge allegations.  Opp'n 7 & n.28; Kane Ex. 1.  But as explained, Mot. 12, those courts did not confront the situation here, where the complaint itself acknowledges the need for a forensic investigation to discover loan-specific breaches.  Plaintiffs must allege that U.S. Bank did that analysis for the trusts at issue, but they fail to do so.[1]  And Plaintiffs plead no other means by which U.S. Bank discovered loan-specific breaches.[2]  Accordingly, whatever may have happened in other cases, Plaintiffs here fail to allege that U.S. Bank discovered R&W breaches, requiring dismissal of their claims.

> **2.    For certain trusts, U.S. Bank had no duty to give notice or enforce repurchase rights for representation and warranty breaches.**

---

[1] Plaintiffs assert that knowledge does not always require forensic analysis because "notice from another party is equivalent."  Opp'n 8.  U.S. Bank does not dispute that, had another party conducted a forensic analysis and told U.S. Bank about it, that too could amount to discovery.  But Plaintiffs do not allege that happened.

[2] Plaintiffs claim U.S. Bank had the *origination* file because it had the Mortgage File, insisting that the "additional documents" mentioned in the definition of "Mortgage File" include the origination file.  Opp'n 6 n.26.  But these "additional documents" are limited to those "required to be included in the Mortgage File," Kane Ex. 3, and nothing requires the origination file to be so included.  *See UBS*, 205 F. Supp. 3d at 461.  Plaintiffs also say "USB has the power to get any documents it wants relating to the mortgage loans," Opp'n 6 n.26, but do not argue U.S. Bank had this power for every trust.  Even if it did, the *power* to obtain a file is not a *duty* to do so.  Requesting and reviewing the origination file is, after all, an investigation, which U.S. Bank has no duty to undertake absent direction and indemnity.  *E.g.*, Ex. M § 8.02(a)(iv).  Plaintiffs' purported contrary authority, Opp'n 8 n.32, confirms this view.  *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2017 WL 3973951, at *13 (S.D.N.Y. Sept. 7, 2017).

For many trusts, Plaintiffs' claims fail for the separate reason that U.S. Bank does not have the duties alleged even if it discovered material breaches. Plaintiffs again obfuscate.

Notice. U.S. Bank has no notice duty at all as to three trusts. Mot. 12; Am. Compl. ¶ 52 n.7. Unwilling to concede even this, Plaintiffs rewrite the argument as one disclaiming *all* duties, then say U.S. Bank has *enforcement* duties. Opp'n 9. But Plaintiffs never dispute the lack of a notice duty, requiring dismissal of their notice claims. *See Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012). As for TBW 2006-6, Plaintiffs conflate document defects and R&W breaches, Opp'n 9-10, and in any event do not dispute they fail to allege notice from one of several specified parties, meaning U.S. Bank's duty was never triggered, Mot. 12.

Enforcement. Plaintiffs do not dispute that, for 19 trusts, the contracts do not expressly impose a trustee duty to enforce repurchase rights for R&W breaches. Mot. 12-13; Ex. Q, R.

Plaintiffs' attempts to manufacture that duty are unavailing. Plaintiffs rely on trustee reimbursement provisions, Opp'n 10, but U.S. Bank already explained why those do not impose a trustee duty to enforce, Mot. 13. As for Plaintiffs' argument that repurchase is the trustee's "sole remedy," Opp'n 10, that at most reflects U.S. Bank had the *right* to demand repurchase. And trustee rights cannot be transformed into duties. *E.g.*, Ex. G § 8.02(a)(iii). Plaintiffs also point to a trustee duty to give notice or to "effect the repurchase protocol." Opp'n 9. But a duty to give notice is just that. It does not include a duty to *enforce*. And Plaintiffs cannot imply a duty to enforce based on the trustee's duty to act in certificateholders' interest. *See* Mot. 13.

Plaintiffs also perplexingly rely on a provision clarifying that the PSAs do not relieve U.S. Bank from liability for its negligence. Opp'n 9 & n.36; *id.* 23 n.106. That provision cannot possibly *create* a trustee duty. It instead addresses the trustee's *existing* duties, making clear that if the trustee performs them negligently, the trustee should not be exculpated. *See id.* 9 n.36.

5

Plaintiffs additionally invoke U.S. Bank's enforcement duty as to missing or defective documents in the two indenture trusts. *Id.* But that is not a duty to enforce repurchase as to breaches of *underwriting* R&Ws, the focus of Plaintiffs' R&W claims. *See* Am. Compl. Ex. F.

Plaintiffs' arguments as to the WaMu trusts are even more mystifying. The Streit Act and TIA, Opp'n 11, have nothing to do with whether U.S. Bank breached *contractual* duties. As for the duty to "act in the certificateholders' interest," *id.*, that is not a license to invent new trustee duties, *see* Mot. 13. And Plaintiffs' insistence that U.S. Bank has a duty to enforce where WaMu is both servicer and the seller, Opp'n 11—despite contrary language in the PSAs, Mot. 13; Schatz Ex. 1 § 2.09—shows that Plaintiffs simply do not care what the PSAs actually say.

Lastly, for five more trusts, Plaintiffs concede their failure to allege U.S. Bank received notice of a failure to cure. Opp'n 10. U.S. Bank's duty thus never arose. Mot. 13; Ex. S.

### B. Plaintiffs Fail to Allege Breach of Alleged Pre-Event of Default Duties Relating to Missing or Defective Documents.

*First*, for the 11 trusts for which U.S. Bank became trustee in 2008 or 2011, U.S. Bank was not trustee when the alleged duties relating to missing or defective documents arose and allegedly were breached. Mot. 14. Plaintiffs' claims as to these 11 trusts therefore fail. Plaintiffs respond that U.S. Bank "had a continuing duty." Opp'n 11. But Plaintiffs cite no specific language in the PSAs creating a continuing duty, which alone defeats their claim.[3] Plaintiffs also assert that U.S. Bank had a duty to enforce repurchase for R&W breaches in the WaMu trusts, and for those trusts missing or defective documents are R&W breaches. Opp'n 12. But as set forth above, U.S. Bank has no duty to enforce repurchase for any of the WaMu trusts.

---

[3] *Royal Park Investments SA/NV v. HSBC Bank USA, Nat'l Ass'n*, 109 F. Supp. 3d 587 (S.D.N.Y. 2015) does not help Plaintiffs either. Opp'n 11 n.49. *Royal Park* concluded, based on particular PSA language, that three of the many trusts there plausibly gave rise to a continuing obligation. 109 F. Supp. 3d at 608. That says nothing about the trusts or PSAs at issue here.

*Second*, U.S. Bank did not have the duties Plaintiffs allege. Plaintiffs do not dispute there is no duty to "take physical possession." Mot. 14; *see* Opp'n 12. Nor do Plaintiffs contest that, for 14 trusts, the custodian, not the trustee, has the duty to review the mortgage files and prepare exception reports. Opp'n 12. That the custodian acts "on behalf of" or "for the benefit of" the trustee, *see id.*, does not make U.S. Bank responsible for custodian actions, *see Blackrock Allocation Target Shares: Series S Portfolio v. U.S. Bank Nat'l Ass'n*, 2015 WL 2359319, at *5 n.10 (S.D.N.Y. May 18, 2015). As for the duty to enforce repurchase obligations for missing or defective documents, Plaintiffs again rely on sole-remedy and reimbursement provisions. Opp'n 12. But, as detailed above, those provisions do not impose trustee duties.[4] *See supra* § I.A.2.

### C.  Plaintiffs' Pre-Event of Default Claim Based on Failure to Give Notice of Alleged Servicer and Master Servicer Breaches Fails.

Plaintiffs' claim fails for 22 trusts because U.S. Bank had no duty to give notice of servicer or master servicer breaches. Mot. 15. Plaintiffs say U.S. Bank had a notice duty "[i]n 10 of these [22] trusts." Opp'n 20 & n.92. But the 10 trusts Plaintiffs point to are the same 10 for which U.S. Bank acknowledges a duty. *See* Ex. X (Chart 9). Plaintiffs also assert that U.S. Bank had a duty to provide notice of EODs or servicer terminations. Opp'n 20. But that is not a duty to give notice of servicer and master servicer breaches. Claims for these 22 trusts thus fail.

That leaves 10 trusts. For these, U.S. Bank had a notice duty only if a Responsible Officer actually knew of the breaches, which Plaintiffs fail to allege. Mot. 15-16. Plaintiffs argue U.S. Bank knew about robo-signing since "it prepared or reviewed the exception reports." Opp'n 15. But U.S. Bank already showed why that argument does not work. Knowledge of

---

[4] Plaintiffs say for two trusts that U.S. Bank had an enforcement duty, because it had a duty to enforce R&W breaches, and missing or defective documents are breaches of R&Ws under the MLPAs. Opp'n 13. But the cited MLPA provisions, Opp'n 13, do not support that argument—they do not contain R&Ws about the completeness of the Mortgage File.

loans with exceptions is not knowledge that loans in foreclosure are the same ones identified in exception reports, and Plaintiffs' argument assumes a duty to review foreclosure filings against exception reports that U.S. Bank did not have. Mot. 16-17. Plaintiffs say nothing, conceding the point. *See Felske*, 2012 WL 716632, at *3. They also leave unmentioned U.S. Bank's argument that, because master servicers had no duties as to R&W breaches and missing documents, U.S. Bank cannot be liable for failing to give notice of their purported breaches of such duties. Mot. 15-16. Plaintiffs cannot avoid these issues by casting them as fact-bound. Opp'n 15, 16 n.67, 22. U.S. Bank's arguments are based on the absence of contractual duties (its own and servicers'), which can (and should) be resolved now. *See Medtech Prods., Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 807 (S.D.N.Y. 2008). Plaintiffs' catch-all response—the bare claim that they "plausibly allege[] that USB knew of servicer breaches," Opp'n 20—is no response at all.

### D. Plaintiffs' Reg AB Claims Must Be Dismissed.

Plaintiffs now limit their RegAB claims to four trusts and to the claim that U.S. Bank "filed false reports as custodian." Opp'n 22 & nn.102, 103. But RegAB does not apply to two of these trusts, because they closed before January 1, 2006. 70 Fed. Reg. 1506-01. In any case, Plaintiffs misunderstand U.S. Bank's obligations. U.S. Bank had no duty to report sponsor or originator breaches. *See* Am. Compl. ¶ 144; Reply Ex. A. Nor did U.S. Bank certify servicers had complied with their contractual duties. U.S. Bank's "Report on Compliance with Applicable Servicing Criteria Pursuant to Item 1122" addressed only the *trustee's* activities relating to the specific RegAB criteria. *See* Reply Ex. A; Am. Compl. ¶ 144. And Plaintiffs allege no facts suggesting these reports were false. Plaintiffs fail to allege a breach of any RegAB duties.

### E. Plaintiffs Fail to Allege Breach of Post-Event of Default Duties.

Plaintiffs' post-EOD claims fail because they do not allege (1) the occurrence of an EOD and (2) that U.S. Bank or a Responsible Officer had actual knowledge or written notice of it.

1.      **Plaintiffs fail to plead an Event of Default under the PSAs or SSAs.**

(a)      **Plaintiffs fail to plead the requisite written notice and failure to cure and, for 26 trusts, cannot rely on the prevention doctrine.**

There is no dispute Plaintiffs fail to allege the requisite written notice and failure to cure, and thus fail to allege the elements of an EOD. Opp'n 17; Am. Compl. ¶ 117. And for 26 trusts, Plaintiffs cannot rely on the prevention doctrine to avoid this failure. Like in *Fixed Income Shares: Series M v. Citibank NA*, 69 N.Y.S.3d 288 (1st Dep't 2018), Plaintiffs cannot allege either that U.S. Bank had a duty to give notice to trigger the cure period, or that U.S. Bank actively hindered another party from giving notice. *See id.* at 289.

*First*, Plaintiffs fail to allege a duty to give notice. Plaintiffs no longer argue that "shall have been given" imposes a trustee duty to give notice to servicers or master servicers. *See* Am. Compl. ¶ 55. For good reason—*Fixed Income* squarely forecloses that argument, 69 N.Y.S.3d at 289, as U.S. Bank explained, Mot. 20-21. And Plaintiffs' newly invoked provisions are equally unhelpful. *See* Opp'n 18 & nn. 84, 85. They either appear in the six trusts for which U.S. Bank concedes it could have a duty (but does not concede the prevention doctrine applies, *see* BANA Opp'n 17 n.81), or require notice of different events or notice to different parties, Kane Ex. 13.

Plaintiffs say the court in *Pacific Life Insurance Co. v. Bank of New York Mellon*, 2018 WL 1382105 (S.D.N.Y. Mar. 16, 2018), "[i]nterpret[ed] similar provisions [and] held that the trustee must notify of servicer breaches." Opp'n 18 n.84. That is not true. The court relied *solely* on "Section 7.01," the provision stating that notice "shall have been given" by the trustee, *Pac. Life*, 2018 WL 1382105, at *10, to conclude (contrary to *Fixed Income*) that the trustee had a notice duty. Plaintiffs thus cannot rely on *Pac. Life* to establish a trustee duty to give notice.

The absence of that duty ends the prevention-doctrine inquiry—with implied obligations disclaimed and no duty to give notice, the prevention doctrine simply does not apply. *See Fixed*

*Income*, 69 N.Y.S.3d at 289; *Thor Props., LLC v. Chetrit Grp. LLC*, 936 N.Y.S.2d 196, 198 (1st Dep't 2012) ("prevention doctrine" is "a variant of the implied covenant of good faith").

In all events, absent a duty, Plaintiffs at a minimum must allege that U.S. Bank *actively* hindered another party from giving notice. That Plaintiffs dispute this principle, BANA Opp'n 13-14, is baffling. The Second Circuit could not have been clearer that where there is "no duty" to effect the condition, "only active frustration of the occurrence of the condition precedent" can "constitute waiver of the precondition." *In re Bankers Tr. Co.*, 450 F.3d 121, 128 (2d Cir. 2006). Plaintiffs' authorities confirm this principle—in each, active or passive conduct was sufficient *only* because the promisor had a duty to effect the condition. *See* BANA Opp'n at 13-14. Here, U.S. Bank has no duty, so Plaintiffs must allege active hindrance.

This Plaintiffs cannot do. Plaintiffs contend "USB actively frustrated others' ability to notify, by filing false certifications, accepting certifications it knew to be false, and allowing foreclosures to proceed in its name using forged and robo-signed documents." Opp'n 19. But "accepting certifications" and "allowing foreclosures" are merely "[p]assive acquiescence," which is "not an act of prevention or hindrance." *Amies v. Wesnofske*, 174 N.E. 436, 439 (N.Y. 1931). Indeed, they are no more active than failing to give notice, which is insufficient. *Fixed Income*, 69 N.Y.S.3d at 289. And even if "filing false certifications," Opp'n 19, could be considered "active" conduct, it is irrelevant to the prevention-doctrine analysis. The purportedly false certifications are RegAB certifications, and the two trusts for which U.S. Bank allegedly filed them are not among the 26 trusts for which U.S. Bank, at this stage, disputes the prevention doctrine. Even if they were, the certifications have nothing to do with servicer or master servicer breaches, and so could not have prevented other parties from learning about breaches and giving notice. *Pac. Life*'s contrary conclusion, 2018 WL 1382105, at *10, respectfully, is flawed for the

same reasons—it misunderstood New York law and the nature of U.S. Bank's certifications.

At any rate, Plaintiffs fail to allege causation because investors themselves could have given the required notice.  Mot. 21; *see also Bankers Tr.*, 450 F.3d at 129 (causation is a separate element); *Fixed Income*, 69 N.Y.S.3d at 290.  That this might "require ownership levels that are very difficult to obtain," Opp'n 19, is no reason to disregard the requirement—indeed, it is by design that a particular percentage of holders must combine to take action.  *See UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*, 793 F. Supp. 448, 454 (S.D.N.Y. 1992).

**(b)      Plaintiffs cannot rely on "automatic" EODs.**

Plaintiffs persist in arguing that EODs occurred without notice and failure to cure based on servicers' failure to provide a "conforming certification."  Opp'n 14, 19.  But as already established, Mot. 21-22, Plaintiffs do not plead the alleged EOD trigger—"[f]ailure of the Master Servicer to comply with this Section 3.20," *i.e.*, to provide by March 15 an "Annual Statement of Compliance" that "a review" of the Master Servicer's activities "has been made" and the Master Servicer "fulfilled all of its obligations," Kane Ex. 11.  Plaintiffs allege only that servicers submitted "false" statements.  While that might breach some other servicer duty (and, with notice and failure to cure, could become an EOD), it does not allege a violation of § 3.20.  As for Plaintiffs' argument that U.S. Bank cannot rely on servicer certifications, Opp'n 16, 22, U.S. Bank never claimed it could.

For four trusts, Plaintiffs have an additional theory—that "an EOD arises automatically," because "[t]he master servicer needed no notice to be aware of its own breaches."  Opp'n 14.  But it is only when a contractually defined Servicing Officer has actual knowledge of the breach that an EOD can arise.  *See* Kane Ex. 10.  Plaintiffs nowhere plead that.  And in any case, for the one indenture trust, the EOD could not have triggered prudent-person duties.  *See* Mot. 6-7.

**(c)      Plaintiffs fail to plead the requisite master servicer breach**

For 10 trusts, only a master servicer EOD triggers post-EOD duties, Ex. FF (Chart 15), yet Plaintiffs fail to allege the predicate master servicer breach, Mot. 22.  Plaintiffs' only response is to repeat their defective allegations.  Opp'n 16.  That is no response at all.

### 2.     Plaintiffs fail to allege depositor or Indenture EODs.

U.S. Bank's motion explains why Plaintiffs' claims based on depositor and Indenture EODs must be dismissed.  Mot. 22-23.  Plaintiffs' only response, once again, is to repeat their defective allegations.  Opp'n 16-17 & nn. 71-79.[5]  That is not enough to avoid dismissal.

### 3.     Plaintiffs fail to plead actual knowledge or written notice of an EOD.

Separately requiring dismissal, Plaintiffs fail to allege that a Responsible Officer or U.S. Bank received written notice or had actual knowledge of an EOD.  *See* Mot. 23-25.

Plaintiffs' contrary arguments conflate servicer breaches with EODs.  Plaintiffs (falsely) assert that a servicer breach "is an EOD under every PSA," Opp'n 13-14, and then rely on their allegations about purported knowledge of servicer *breaches* to say they allege knowledge of *EODs*.  Opp'n 13-14.  But after *Commerce Bank* that will not do: notice of servicer breaches is not notice of EODs; it is a "notice of events that, with time, might ripen into [EODs]."  35 N.Y.S.3d at 65.  And Plaintiffs' generalized allegations of knowledge are the same ones rejected in *Commerce Bank*.  Mot. 24-25.  Plaintiffs' cited cases are unpersuasive—all but one pre-date the First Department's decision in *Commerce Bank*.  Opp'n 14-15 & nn. 54, 58.  *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483 (S.D.N.Y. 2017), found "the Complaint's allegations [there to be] far more robust" than *Commerce Bank*'s, *id.* at 493.  Whether or not true there, it is not here.  There is no meaningful difference between the letters here and those in

---

[5] Plaintiffs say issuers breached by failing to fulfill "a repurchase duty."  Opp'n 17.  But issuers do not have that duty.  Nothing in Plaintiffs' cited provisions, *id.* n.78, imposes that duty.

*Commerce Bank*—none gave notice of EODs.  *See* Mot. 23-24.

 **F.** **No-Action Clauses Bar Plaintiffs' Claims For Six Trusts.**

 For the six trusts where the trustee is not a demand party or not the only demand party,

Plaintiffs failed to comply with the PSAs' no-action clauses and cannot rely on *Cruden v. Bank*

*of New York*, 957 F.2d 961 (2d Cir. 1992) to excuse that failure.  Mot. 25.

 Plaintiffs now argue that "it would be absurd to demand that Wells Fargo"—the demand

party—"bring an action against USB for failing to enforce the PSA against Wells Fargo."  Opp'n

20-21.  But *Commerzbank* addressed and rejected this exact position, 277 F. Supp. 3d at 495,

finding that it would "expand[]"*Cruden*'s exception "for suits brought against the trustee into

one that swallows a no-action clause as a whole," *id.* at 495.

 Plaintiffs rely on *Bakal v. U.S. Bank Nat'l Ass'n*, 2018 WL 1726053 (S.D.N.Y. Apr. 2,

2018), *appeal filed*, No. 18-1320 (2d Cir. May 3, 2018), where the court excused demand under

similar facts.  Opp'n 21 n.99.  But *Bakal* ignored what *Commerzbank* expressly recognized: "no-

action clauses are strictly construed in New York," 277 F. Supp. 3d at 495-96, requiring that any

exceptions be applied narrowly.  Thus, *Commerzbank* and similar cases[6] limiting the absurdity

exception to a demand party suing *itself* are the better reasoned ones, and should control here.

**II.** **PLAINTIFFS' REMAINING CLAIMS ALSO MUST BE DISMISSED.**

 Plaintiffs' statutory and common-law claims also should be dismissed.

 <u>TIA</u>.  Plaintiffs fail to allege *issuer* defaults, the only "defaults" relevant under § 315(b).

Plaintiffs argue that "defaults" include servicer defaults.  Opp'n 23.  Even so, Plaintiffs' claim

---

 [6] *E.g.*, *Sterling Fed. Bank, F.S.B. v. Bank of N.Y. Mellon*, 2012 WL 3101699, at *2 (N.D. Ill. July 30, 2012).  Plaintiffs claim the demand party in *Sterling* was not an alleged wrongdoer. Opp'n 21 n.100.  Plaintiffs could say that only if they didn't read *Sterling*.  *See* 2012 WL 3101699, at *1 (noting the plaintiffs sued BNYM as Trust Administrator, the demand party).

fails because they do not allege U.S. Bank knew about these defaults. *See supra* § I.C., § I.E.3.

As for the § 315(c) claim, Plaintiffs premise their claim on "the occurrence of an EOD." Opp'n 24. It therefore suffers from the same defect as Plaintiffs' post-EOD claims: Plaintiffs fail to allege an EOD and that the trustee had written notice or actual knowledge of it. *See Phoenix Light v. BNYM*, 2017 WL 3973951, at *20.

Plaintiffs have little to say in defense of their § 316(b) claim. They address arguments about "ownership interests" that U.S. Bank never made. Opp'n 23-24. As for the argument that U.S. Bank did make—that § 316(b) does not apply to a holder's "practical rights to the principal and interest," Mot. 26—Plaintiffs concede "a number of courts" have agreed, Opp'n 24 n.108, yet they offer no persuasive reason to depart from that line of authority.

Tort Claims. The economic-loss doctrine bars each of Plaintiffs' tort claims because, whether or not Plaintiffs allege extra-contractual duties, Plaintiffs seek the same economic recovery as they seek for the contract claims. *See* Mot. 27. Plaintiffs' only response is to insist that they have alleged extra-contractual duties. Opp'n 26. That amounts to no response at all.

Implied-Covenant. Plaintiffs abandon this claim, Opp'n 23 n.106, requiring its dismissal.

Streit Act. Plaintiffs venture no response to our argument, Mot. 28, that Plaintiffs fail to state a claim under § 126(1), and thus concede dismissal. *Felske*, 2012 WL 716632, at *3. Plaintiffs' multi-page response, Opp'n 24-25, addresses other arguments U.S. Bank never made.

## III. MANY OF PLAINTIFFS' CLAIMS ARE TIME-BARRED.

Ohio's statutes of limitations, including the borrowing statute, govern Plaintiffs' claims. Thus, Plaintiffs' claims must satisfy the statutes of limitations of Ohio and those of California, where Plaintiffs suffered the alleged loss and thus where the claims accrued. Ohio Rev. Code Ann. § 2305.03(B); *Taylor v. First Resolution Inv. Corp.*, 72 N.E.3d 573, 586 (Ohio 2016). Measured against California's limitations periods, many claims are untimely. Mot. 28-30.

14

Plaintiffs respond that the borrowing statute does not apply because *Commerzbank* did not apply it. Opp'n 26-27. But the borrowing statute never came up there, and so the decision presents no barrier to applying it here. Recognizing as much, Plaintiffs turn to *Taylor*, claiming that the court embraced a "significant acts" or "locus of events" test to determine where a claim accrues. Opp'n 27 & n.123. Alas, *Taylor* did just the opposite—it specifically *rejected* the lower court's application of the "most significant relationship" test and held that the proper test is "where the plaintiff resides and sustains the economic impact of the loss." 72 N.E.3d at 585.

Plaintiffs' other arguments merit little attention. That *Baena v. Woori Bank* addressed New York and not Ohio law is irrelevant. Opp'n 27 n.123. *Taylor* expressly relied on cases applying the plaintiff-residence rule under New York's borrowing statute as "directly on point." 72 N.E.3d at 586-87. For the same reason, whether "where the acts which give rise to a cause of action took place" can be resolved now, Opp'n 27 n.123, is irrelevant. The relevant fact—where Plaintiffs reside and felt the alleged loss—can be. Plaintiffs allege and confirm in opposition that their principal places of business are in California. Am. Compl. ¶¶ 19-20; BANA Opp'n 15.

Plaintiffs fare no better with class-action tolling. Plaintiffs argue that their claims are timely even under California law because certain federal class actions tolled their claims, relying on Ohio's cross-jurisdictional tolling. Opp'n 28-30. But Ohio tolling rules do not matter. It is California's tolling rules that decide whether a claim is tolled under California's limitations periods. *See Casey v. Merck & Co.*, 653 F.3d 95, 100 (2d Cir. 2011). And under California law, the cited class actions do not toll Plaintiffs' claims, because California does not recognize cross-jurisdictional tolling. *See Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187 (9th Cir. 2009).

## CONCLUSION

The Court should dismiss the Amended Complaint in its entirety and with prejudice.

Dated:  May 21, 2018                    Respectfully submitted,

                                        /s/ David F. Adler
                                        JONES DAY
                                        David F. Adler (admitted *pro hac vice*)
                                        Louis A. Chaiten (admitted *pro hac vice*)
                                        North Point
                                        901 Lakeside Avenue
                                        Cleveland, Ohio  44114-1190
                                        (216) 586-3939; (216) 579-0212 (fax)
                                        dfadler@jonesday.com
                                        lachaiten@jonesday.com

                                        Michael T. Marcucci (admitted *pro hac vice*)
                                        100 High Street, 21st Floor
                                        Boston, Massachusetts  02110-1781
                                        (617) 960-3939; (617) 449-6999 (fax)
                                        mmarcucci@jonesday.com

                                        Albert J. Rota
                                        2727 N. Harwood Street, Suite 500
                                        Dallas, Texas  75201-1515
                                        (214) 220-3939; (214) 969-5100 (fax)
                                        ajrota@jonesday.com

                                        Andrew S. Kleinfeld
                                        250 Vesey Street
                                        New York, New York  10281-1047
                                        (212) 326-3939; (212) 755-7306 (fax)
                                        askleinfeld@jonesday.com

                                        *Attorneys for Defendant U.S. Bank National*
                                        *Association*

16

**<u>CERTIFICATE OF SERVICE</u>**

I, David F. Adler, certify that on May 21, 2018, I caused the foregoing Reply

Memorandum in Support of U.S. Bank National Association's Motion to Dismiss Plaintiffs'

Amended Complaint to be served on all counsel of record by electronic delivery via the ECF

system.


<u>/s/ David F. Adler</u>
   David F. Adler

17