**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PACIFIC LIFE INSURANCE COMPANY and PACIFIC LIFE & ANNUITY COMPANY, <br><br> Plaintiffs, <br><br> - against - <br><br> U.S. BANK NATIONAL ASSOCIATION and BANK OF AMERICA, N.A., <br><br> Defendants. | Case No. 1:16-cv-00555-PGG |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

MUNGER, TOLLES & OLSON LLP
James C. Rutten
Jacob S. Kreilkamp
Wesley T.L. Burrell
Matthew K. Donohue
350 South Grand Avenue, 50th Floor
Los Angeles, California  90071-3426
(213) 683-9100; (213) 687-3702 (fax)
james.rutten@mto.com
jacob.kreilkamp@mto.com
wesley.burrell@mto.com
matthew.donohue@mto.com

SIDLEY AUSTIN LLP
David F. Graham
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000; (312) 853-7036 (fax)
dgraham@sidley.com

SIDLEY AUSTIN LLP
Isaac S. Greaney
Daniel Gimmel
Jon W. Muenz
787 Seventh Avenue
New York, New York  10019
(212) 839-5300; (212) 853-5599 (fax)
igreaney@sidley.com
dgimmel@sidley.com
jmuenz@sidley.com

*Attorneys for Defendant Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

I.  PLAINTIFFS' CLAIMS AGAINST BANA ARE TIME-BARRED.................................1

    A.  The PSAs' Choice-of-Law Provisions Select the Applicable Statutes of Limitations .....................................................................................................................1

    B.  Plaintiffs' Claims Against BANA Relating to MSM 2006-7 Are Barred by New York's Statutes of Limitations .........................................................................3

    C.  Plaintiffs' Claims Against BANA Relating to the WaMu Trusts Are Barred By Delaware's Three-Year Statute of Limitations .....................................4

        1.  Plaintiffs' Own Allegations Prevent Them From Relying on the Discovery Rule, Fraudulent Concealment, or Equitable Tolling Doctrines ..............................................................................................................4

        2.  Class Action Tolling Does Not Help Plaintiffs..........................................5

            (a)  No Tolling Against BANA Applies to Claims as to WMALT 2007-4 .....................................................................................6

            (b)  Standing Defects Preclude Tolling for WAMU 2006-AR2, WAMU 2006-AR18, and WAMU 2007-HY7.............................6

            (c)  Class Action Tolling for WaMu 2007-HY3, WaMu 2006-AR8, and WaMu 2007-HY2 Does Not Save Plaintiffs' Claims ............................................................................................7

            (d)  Class Action Tolling for WaMu 2007-HY4, WaMu 2006-AR16, and WaMu 2007-HY1 Does Not Save Plaintiffs' Pre-EOD Claims .................................................................................7

II.  PLAINTIFFS HAVE NOT STATED A CLAIM FOR BREACH OF CONTRACT .....................................................................................................................8

    A.  *Contra Proferentem* Does Not Apply ....................................................................8

    B.  Plaintiffs Have Not Alleged Breaches of Pre-EOD Duties .................................9

        1.  The PSAs Did Not Impose a General "Enforcement Duty" on BANA ..............................................................................................................9

        2.  Plaintiffs Have Failed to Plead That BANA Had Actual Knowledge of R&W Breaches................................................................11

        3.  The Appointment of a Custodian Is Irrelevant to BANA's Arguments.................................................................................................12

    C.  Plaintiffs Have Not Alleged an EOD or a Breach of Post-EOD Duties ...............13

III.  PLAINTIFFS HAVE NOT STATED A TORT CLAIM AGAINST BANA ..................14

**TABLE OF CONTENTS**
**(continued)**

**Page**

     A.    Delaware Law Governs Plaintiffs' Tort Claims on the WaMu Trusts ..................14

     B.    Plaintiffs Have Not Stated a Tort Claim Under Delaware Law............................14

IV.    PLAINTIFFS' REMAINING CLAIMS FAIL AS TO BANA ........................................15

V.    PLAINTIFFS HAVE NOT ESTABLISHED STANDING WITH REGARD TO CERTIFICATES THEY SOLD..........................................................................................15

CONCLUSION...........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n,*
165 F. Supp. 3d 80 (S.D.N.Y. 2016)................................................................6, 10

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)...................................................................................................2

*Cantor v. Perelman,*
414 F.3d 430 (3d Cir. 2005).....................................................................................8

*Carr v. Town of Dewey Beach,*
730 F. Supp. 591 (D. Del. 1990)...............................................................................8

*Commerzbank AG v. U.S. Bank Nat'l Ass'n.,*
277 F. Supp. 3d 483 (S.D.N.Y. 2017).......................................................................2

*In re Coty Inc. Sec. Litig.,*
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ........................................................12

*Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.,*
838 F.2d 66 (2d Cir. 1988)......................................................................................10

*Fixed Income Shares: Series M v. Citibank N.A.,*
2018 WL 1449580 (S.D.N.Y. Mar. 22, 2018) ........................................................12

*Hunt Const. Group, Inc. v. Brennan Beer Gorman/Architects, P.C.,*
607 F.3d 10 (2d Cir. 2010).........................................................................................3

*Klock v. Lehman Bros. Kuhn Loeb Inc.,*
584 F. Supp. 210 (S.D.N.Y. 1984) .........................................................................14

*Korwek v. Hunt,*
827 F.2d 874 (2d Cir. 1987)......................................................................................6

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.,*
660 Fed. Appx. 554 (10th Cir. 2016)........................................................................3

*In re LIBOR-Based Fin. Instruments Antitrust Litig.,*
2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ..........................................................7

*Mayagüez S.A. v. Citigroup, Inc.,*
2018 WL 1587597 (S.D.N.Y. Mar. 28, 2018) ........................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McCalla v. City of New York*,
  2017 WL 3601182 (S.D.N.Y. Aug. 14, 2017)..........................................................6

*N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010) ........................................................6

*In re Oakwood Homes Corp.*,
  340 B.R. 510 (Bankr. D. Del. 2006) ......................................................................15

*Pac. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*,
  2016 WL 223683 (S.D. Ohio Jan. 19, 2016) ..........................................................2

*Phoenix Light SF Ltd. v. U.S. Bank Nat. Ass'n*,
  2015 WL 2359358 (S.D.N.Y. May 18, 2015) ........................................................15

*Policemen's Annuity & Benefit Fund v. Bank of America, N.A.*,
  No. 12-cv-2865-KBF (S.D.N.Y.)..........................................................................6, 7

*Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  2016 WL 439020 (S.D.N.Y. Feb. 3, 2016)............................................................10

*In re Trusteeship Created by American Home Mortgage Investment Trust*
  2005-2, 2014 WL 3858506 (S.D.N.Y. July 24, 2014)............................................2

*Walden v. Fiore*,
  134 S. Ct. 1115 (2014)............................................................................................2

*Webster v. Fall*,
  266 U.S. 507 (1925)................................................................................................3

**STATE CASES**

*2138747 Ontario, Inc. v. Samsung C&T Corp.*,
  144 A.D.3d 122 (1st Dep't 2016) ...........................................................................3

*AM Gen. Holdings LLC v. The Renco Grp., Inc.*,
  2016 WL 4440476 (Del. Ch. Aug 22, 2016) ..........................................................5

*Bentley v. Equity Tr.*,
  2015 WL 7254796 (Ohio Ct. App. Nov. 16, 2015) ..............................................14

*Capital Z Fin. Servs. Fund II, L.P. v. Health Net, Inc.*,
  43 A.D.3d 100 (2007)...........................................................................................14

iv

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Data Mgmt. Internationale, Inc. v. Saraga*,
2007 WL 2142848 (Del. Super. Ct. July 25, 2007) ...............................................14

*DCV Holdings, Inc. v. ConAgra, Inc.*,
889 A.2d 954 (Del. 2005) ...............................................10

*In re Dean Witter P'ship Litig.*,
1998 WL 442456 (Del. Ch. July 17, 1998) .........................................4, 5

*Dow Chem. Corp. v. Blanco*,
67 A.3d 392 (Del. 2013) ...............................................7

*Faison v. Lewis*,
25 N.Y.3d 220 (2015) ...............................................2

*Fixed Income Shares: Series M v. Citibank, N.A.*,
157 A.D.3d 541 (2018) ...............................................13

*I.U. N. Am., Inc. v. A.I.U. Ins. Co.*,
896 A.2d 880 (Del. Super. Ct. 2006) ...............................................8

*Knieriemen v. Bache Halsey Stuart Shields Inc.*,
74 A.D.2d 290 (1980) ...............................................14

*Kuhn Const., Inc. v. Diamond State Port Corp.*,
990 A.2d 393 (Del. 2010) ...............................................8, 9

*Nationwide Emerging Managers, LLC v. Northpointe Holdings, LLC*,
112 A.3d 878 (Del. 2015) ...............................................9

*Schoenrade v. Tracy*,
658 N.E.2d 247 (Ohio 1996) ...............................................2

*Wash. House Condominium Ass'n of Unit Owners v. Daystar Sills, Inc.*,
2017 WL 3412079 (Del. Super. Ct. Aug. 8, 2017) ...............................................5

*Western and Southern Life Ins. Co. v. Deutsche Bank Nat. Trust Co.*,
2015 WL 9998236 (Ohio Ct. Com. Pl. 2015) ...............................................2

*Zimmerman v. Crothall*,
62 A.3d 676 (Del. Ch. 2013) ...............................................8

**OTHER AUTHORITIES**

1 *McLaughlin on Class Actions* § 3:15 (14th ed. 2017) ...............................................6

## PRELIMINARY STATEMENT

BANA's[1] motion presents unique arguments based on the specific facts and contracts at issue here, which Plaintiffs fail to rebut in their opposition brief.  Among other unique circumstances, BANA resigned as trustee nearly five years (or more) before Plaintiffs filed this action, rendering Plaintiffs' claims untimely.  Additionally, the WaMu PSAs at issue expressly disclaim the duties Plaintiffs claim BANA breached.  BANA's duties as trustee were defined by the PSAs to which it was a party, not by PSAs in the various other cases on which Plaintiffs rely.  Because Plaintiffs' claims are untimely under Plaintiffs' own allegations, and because the PSAs in *this* case do not impose the duties Plaintiffs hypothesize, BANA's motion should be granted.

## I.   PLAINTIFFS' CLAIMS AGAINST BANA ARE TIME-BARRED

### A.   <u>The PSAs' Choice-of-Law Provisions Select the Applicable Statutes of Limitations</u>

Plaintiffs concede that both New York *and* Ohio choice-of-law principles require the Court to honor a choice-of-law provision that selects another state's law to govern the statute of limitations.  (*See* Opp'n at 22–23.)  There is thus no need for the Court to decide whether New York or Ohio choice-of-law principles apply here; the Court need only determine whether the PSAs select New York and Delaware limitations law, an issue that was neither presented to nor considered by Judge Pauley in *Commerzbank* when he held that Ohio's statute of limitations applied to different claims concerning different trusts.[2]

---

[1] Capitalized terms not defined herein have the meanings assigned in BANA's opening brief. Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted unless indicated.  Unless indicated, all exhibit citations are to the Donohue Declaration exhibits.  Citations to the Motion ("Mot") or Opposition ("Opp'n") are to BANA's opening brief and to Plaintiffs' opposition to BANA's opening brief, respectively.

[2] As discussed in BANA's opening brief, absent choice-of-law clauses, New York procedural

Plaintiffs assert that the PSAs' choice-of-law provisions do not select any "procedural" rules. But the PSA's choice-of-law clauses are broadly worded, prescribing that "the obligations, rights *and remedies* of the parties" will be determined in accordance with the chosen state's law.[3] The inclusion of "remedies" manifests a clear intent to incorporate the applicable statutes of limitations; both New York and Ohio courts have long held that "statutes of limitations are *remedial* in nature." *Schoenrade v. Tracy*, 658 N.E.2d 247, 249 (Ohio 1996).[4]

Plaintiffs' only response is that *In re Trusteeship Created by American Home Mortgage Investment Trust 2005-2*, 2014 WL 3858506 (S.D.N.Y. July 24, 2014), held that Minnesota procedural law applied despite a choice-of-law provision providing that "the obligations, rights and remedies of the parties" would be determined under New York law. (*See* Opp'n at 22 n.73.) The court did not, however, address whether the term "remedies" incorporates statutes of limitations (let alone in light of case law cited here), and "[q]uestions which merely lurk in the

---

Footnote continued from previous page

law, including statutes of limitations, would govern because there was no personal jurisdiction over BANA in Ohio. (*See* Mot. at 12–13.) As the Ohio court found when transferring this case, "Bank of America's involvement in this dispute also lacks a meaningful connection to Ohio." *Pac. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2016 WL 223683, at *6 (S.D. Ohio Jan. 19, 2016). Indeed, in opposition, the only connections to Ohio that Plaintiffs can muster are a miniscule number of at-issue mortgages on properties in Ohio, and one BANA employee who telecommutes from Ohio. (*See* Opp'n at 16.) These "random, fortuitous, or attenuated contacts" do not establish jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Plaintiffs also argue that BANA was subject to jurisdiction in Ohio based on *Western and Southern Life Ins. Co. v. Deutsche Bank Nat. Trust Co.*, 2015 WL 9998236, at *2 (Ohio Ct. Com. Pl. 2015), and *Commerzbank AG v. U.S. Bank Nat'l Ass'n.*, 277 F. Supp. 3d 483, 490 (S.D.N.Y. 2017). Those decisions, however, erred in attributing the contacts of third parties—servicers—to the trustees. *See Walden v. Fiore*, 134 S. Ct. 1115, 1118 (2014) ("For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts that the 'defendant *himself*' creates with the forum." (quoting *Burger King*, 471 U.S. at 475)).

[3] Ex. 2 at 29–30 (WaMu trusts); Ex. 4 § 11.06 (MSM trust); *see also* Mot. at 4–5.

[4] *Accord Faison v. Lewis*, 25 N.Y.3d 220, 233 (2015) ("The theory of the statute of limitations generally followed in New York is that the passing of the applicable period … suspends the remedy.").

record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Hunt Const. Group, Inc. v. Brennan Beer Gorman/Architects, P.C.*, 607 F.3d 10, 18 (2d Cir. 2010) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).  By contrast, the Tenth Circuit has expressly agreed with BANA's position:

> [T]he Loan Purchase Agreements[,] . . . implicitly include selection of New York's limitations period by stating that the "obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York."  This language includes New York's limitations period because the length of time to sue is something that affects the parties' "rights and remedies."  *See Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 687 N.Y.S.2d 604, 710 N.E.2d 250, 253 (1999) (stating that New York's statutes of limitations suspend the remedy rather than affect the underlying right).  Thus, when the parties chose New York's law on remedies, their choice effectively included New York's period of limitations … .

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co.*, 660 Fed. Appx. 554, 558–59 (10th Cir. 2016).

## B.  Plaintiffs' Claims Against BANA Relating to MSM 2006-7 Are Barred by New York's Statutes of Limitations

Plaintiffs do not dispute that all of their claims relating to MSM 2006-7 are untimely under New York law.  (*See* Mot. at 11–12.)  They argue instead that the claims would be timely under Ohio law.  (*See id.* at 18 n.55.)  Because New York law applies for the reasons discussed above, Plaintiffs' claims as to MSM 2006-7 must be dismissed in full.[5]

---

[5] Plaintiffs' claims also would be untimely under New York's borrowing statute if they accrued in a jurisdiction with a shorter statute of limitations.  *See Lehman, Bros.*, 660 Fed. App'x at 559; *2138747 Ontario, Inc. v. Samsung C&T Corp.*, 144 A.D.3d 122, 126–27 (1st Dep't 2016).  For purposes of this motion, however, BANA does not rely upon the borrowing statute, because Plaintiffs' claims are untimely even under New York law.

C.    **Plaintiffs' Claims Against BANA Relating to the WaMu Trusts Are Barred By Delaware's Three-Year Statute of Limitations**

Plaintiffs concede that any claims against BANA accrued no later than December 2010, when BANA sold its trustee business.  (Opp'n at 20–21.)  Despite waiting more than four years to file suit, Plaintiffs rely on tolling to assert that Delaware's three-year statute of limitations does not bar their claims on the WaMu trusts.  But Plaintiffs' own allegations, and other facts subject to judicial notice, demonstrate that no tolling doctrine can salvage their untimely claims.

1.    **Plaintiffs' Own Allegations Prevent Them From Relying on the Discovery Rule, Fraudulent Concealment, or Equitable Tolling Doctrines**

Plaintiffs assert that their claims as to the WaMu trusts were tolled pursuant to Delaware's discovery rule and its fraudulent concealment and equitable tolling doctrines. "Significantly, if the limitations period is tolled under any of these theories, it is tolled *only until* the plaintiff discovers (or exercising reasonable diligence should have discovered) his injury. Thus, the limitations period begins to run when the plaintiff is *objectively* aware of the facts giving rise to the wrong, i.e., on inquiry notice." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (Del. Ch. July 17, 1998) (emphasis in original), *aff'd*, 725 A.2d 441 (Del. 1999) (adopting lower court decision).  Here, the core of Plaintiffs' claims is their allegation that *public* information put *BANA* on inquiry notice of underlying wrongdoing.  (*See, e.g.*, FAC ¶¶ 99, 111, 145, 138; *id.* Ex. F ¶¶ 244–273; *id.* Ex. H ¶¶ 53–75.)  That very same public information was, by definition, available to Plaintiffs—thereby giving rise to the inquiry notice Plaintiffs themselves allege, including regarding what steps BANA was or was not taking.  (*See* Mot. at 9–10.)

Plaintiffs only response is that "this information . . . was not publicly available until after 2010."  (Opp'n at 21.)  This is incorrect.  Plaintiffs allege that a wealth of information regarding purported WaMu misconduct was publicly available before BANA resigned as trustee—

including two 2008 national news articles, an April 2010 Treasury Department report, and the record of an April 2010 Congressional hearing.[6]  This information plainly was insufficient to provide BANA with the *actual* knowledge of specific wrongdoing in the at-issue trusts that the PSAs require to trigger any BANA duty to act. (*See* Mot. at 17–21.)  But it also plainly *was* sufficient to provide Plaintiffs with the *inquiry* notice of their claims that ends tolling under Delaware limitations law (particularly given Plaintiffs' own allegations of inquiry notice to BANA from this information).[7]  *See, e.g.*, *Dean Witter*, 1998 WL 442456, at *7–9 (granting motion to dismiss where public information put investors on inquiry notice of mismanagement).[8]

### 2.   Class Action Tolling Does Not Help Plaintiffs

Plaintiffs argue that because certain trusts were the subject of prior class action lawsuits, Plaintiffs are entitled to class action tolling here.  As to many trusts, Plaintiffs are simply wrong, because the class action they identify was not brought against BANA, or because the trusts were

---

[6] *See* FAC Ex. F ¶¶ 247, 251–265, 257–269.

[7] Because Plaintiffs' allegations establish that they were on inquiry notice, the Court need not address whether Plaintiffs have pled the other requirements for these tolling doctrines.  In fact, none applies.  The discovery rule applies only to "inherently unknowable injuries" about which the plaintiff was "blamelessly ignorant," which is not the case here because the PSAs contemplate investors will actively monitor their investment.  *See, e.g.*, Ex. 2 at 8-11, 14-18, 24-28; *see also AM Gen. Holdings LLC v. The Renco Grp., Inc.*, 2016 WL 4440476, at *14 (Del. Ch. Aug 22, 2016).  Fraudulent concealment likewise does not apply because Plaintiffs have not alleged BANA committed "an affirmative act of concealment" with "knowledge of the wrong." *Wash. House Condominium Ass'n of Unit Owners v. Daystar Sills, Inc.*, 2017 WL 3412079, at *18 (Del. Super. Ct. Aug. 8, 2017).  And equitable tolling does not apply because Plaintiffs have not alleged that BANA "misled the plaintiff[s]," that Plaintiffs "were prevented from asserting [their] rights in some extraordinary way," or that an EOD occurred making BANA a fiduciary. *Id.* at *18; *In re Dean Witter*, 1998 WL 442456, at *6, 8.

[8] Plaintiffs also suggest that timeliness simply cannot be resolved on a motion to dismiss. (Opp'n at 21.)  This is flatly wrong, especially where, as here, the complaint contains allegations establishing inquiry notice.  BANA's opening brief cited multiple analogous cases resolving Delaware statute of limitations issues, including the discovery rule, on motions to dismiss.  (*See* Mot. at 9–10.)

dismissed from the class action for lack of standing.  And even as to a few trusts where *some*

class action tolling may apply here, any tolling was not long enough to save Plaintiffs' claims.

(a)     *No Tolling Against BANA Applies to Claims as to WMALT 2007-4*

Plaintiffs assert tolling as to WMALT 2007-4 because of *Blackrock v. U.S. Bank*, but no

claims were asserted against BANA in that case.  *See Blackrock Core Bond Portfolio v. U.S.*

*Bank Nat'l Ass'n*, 165 F. Supp. 3d 80 (S.D.N.Y. 2016) (describing claims and parties).[9]

(b)     *Standing Defects Preclude Tolling for WAMU 2006-AR2, WAMU*
        *2006-AR18, and WAMU 2007-HY7*

Plaintiffs assert class action tolling for WaMu 2006-AR2, WaMu 2006-AR18, and

WaMu 2007-HY7 because of their inclusion in *Policemen's Annuity & Benefit Fund v. Bank of*

*America, N.A.*, No. 12-cv-2865-KBF (S.D.N.Y.).[10]  But these trusts were dismissed for lack of

standing,[11] precluding class action tolling.  *See N.J. Carpenters Health Fund v. DLJ Mortg.*

*Capital, Inc.*, 2010 WL 6508190, at *2 (S.D.N.Y. Dec. 15, 2010) ("[T]he *American Pipe* rule

should not apply where the plaintiff that brought the dismissed claim was found by the court to

lack standing." (citing *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987))).[12]  And as detailed in

Exhibit A-2, even if tolling *did* apply, it would not be long enough to save Plaintiffs' claims.[13]

---

[9] In any event, Plaintiffs assert this tolling lasted for just 5 months and 29 days (180 days), thereby still leaving time-barred under Delaware limitations law any claims—including all of Plaintiffs' claims here—that accrued prior to December 27, 2011.  (*See* Exhibit A-2 hereto.)

[10] Plaintiffs acknowledge tolling is determined trust by trust.  (*See* Opp'n to USB Mot. at 29.)

[11] *See Policemen's*, ECF No. 46; *see also id.*, ECF No. 24-2 (listing dismissed trusts).

[12] Delaware courts have not ruled on whether class action tolling applies where a class representative lacked standing to bring the claims.  And although federal courts have disagreed on the issue, "the better reasoned view" is that "tolling is inapplicable because the original court's subject matter jurisdiction was never invoked as to the claims that the plaintiff lacked standing to assert."  1 *McLaughlin on Class Actions* § 3:15 (14th ed. 2017).

[13] Tolling generally runs from the time a claim is introduced until class certification is denied, the claim is dismissed or dropped, or a plaintiff opts out of the class.  *See McCalla v. City of New*

(c)     *Class Action Tolling for WaMu 2007-HY3, WaMu 2006-AR8, and WaMu 2007-HY2 Does Not Save Plaintiffs' Claims*

Plaintiffs also assert class action tolling from *Policemen's* as to WaMu 2007-HY3, WaMu 2006-AR8, and WaMu 2007-HY2.  These trusts *were* at issue in *Policemen's* without any standing defect for brief periods, but, as detailed in Exhibit A-1, the resulting class action tolling (77 days for WaMu 2007-HY3, and 466 days for WAMU 2006-AR8 and WAMU 2007-HY2) was not long enough to save Plaintiffs' claims.[14]

(d)     *Class Action Tolling for WaMu 2007-HY4, WaMu 2006-AR16, and WaMu 2007-HY1 Does Not Save Plaintiffs' Pre-EOD Claims*

WaMu 2007-HY4, WaMu 2006-AR16, and WaMu 2007-HY1 also were at issue in *Policemen's* without standing defects for certain periods of time.  As detailed in Exhibit A hereto, even for these trusts, class action tolling was not long enough to save Plaintiffs' pre-EOD claims.  At most, then, Plaintiffs' *post-EOD* claims could be timely for these trusts, but as shown below, the post-EOD claims are subject to dismissal on the merits.[15]

---

Footnote continued from previous page

*York*, 2017 WL 3601182, at *35 & n.54 (S.D.N.Y. Aug. 14, 2017); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *151 (S.D.N.Y. Oct. 20, 2015).  Although Delaware case law does not specifically delineate when tolling begins and ends, Delaware has generally followed federal court precedents when applying class action tolling under Delaware limitations law.  *See Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 396-98 (Del. 2013).

[14] As further detailed in Exhibit A-2, Plaintiffs' claims as to WaMu 2007-HY3 would remain untimely even if the class action tolling somehow included the 240 days during which a prior class plaintiff who lacked standing attempted to assert claims for this trust.  As to WaMu 2006-AR8 and WaMu 2007-HY2, Plaintiffs' *pre-EOD* claims also would remain untimely under these circumstances, while some *post-EOD* claims theoretically might be timely.  This is because, as shown in BANA's motion, all pre-EOD claims Plaintiffs have pled accrued under Plaintiff's allegations by December 2008, whereas some post-EOD claims theoretically could have accrued after that time.  (*See* Mot. at 7–8.)  But as shown below, the post-EOD claims are subject to dismissal on the merits.

[15] Plaintiffs also attempt to save the early-accruing claims by arguing that BANA's alleged breaches were continuing.  (*See* Opp'n at 20 n.65.)  As discussed in BANA's opening brief, this argument fails as to document review-related claims, because the PSAs prescribed specific times

## II.   <u>PLAINTIFFS HAVE NOT STATED A CLAIM FOR BREACH OF CONTRACT</u>

BANA joins U.S. Bank's arguments as to why Plaintiffs have failed to state a claim for

breach of contract as to any trust at issue, and writes separately here to emphasize why Plaintiffs'

arguments fail as to the WaMu trusts in particular.

### A.   *<u>Contra Proferentem</u>* <u>Does Not Apply</u>

Plaintiffs argue that the Court should "strictly construe[]" the PSAs against BANA, an

apparent attempt to invoke the doctrine of *contra proferentem* to expand BANA's duties beyond

those that are expressly set forth in the PSAs.  (Opp'n at 3; *see also* Opp'n to U.S. Bank Mot. at

3–4.)  However, the doctrine will be applied only to resolve ambiguity, *see Kuhn Const., Inc. v.*

*Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010), and even then only as a tool "of

last resort that will not apply if a document can be interpreted by applying more favored rules of

construction."  *Zimmerman v. Crothall*, 62 A.3d 676, 698 (Del. Ch. 2013).  The PSAs

unambiguously do *not* assign the duties Plaintiffs allege, and therefore *contra proferentem* does

not apply.  (*See* Mot. at 14 & Ex. 2 at 19–21; *see* infra Part IV.B.)  Further, *contra proferentem*

"is not appropriately applied to situations where an agreement resulted from a series of

negotiations between experienced drafters."  *I.U. N. Am., Inc. v. A.I.U. Ins. Co.*, 896 A.2d 880,

884–85 (Del. Super. Ct. 2006).

---

Footnote continued from previous page

by which review duties were to be completed.  (*See* Mot. at 7).  And this argument fails as to
R&W-related claims because Plaintiffs do not allege how BANA could have continued to breach
and cause injury after the bar date for filing repurchase claims in the FDIC's WaMu receivership.
(*See* Mot. at 8.)  Plaintiffs' cited authority is not to the contrary.  *See Carr v. Town of Dewey*
*Beach*, 730 F. Supp. 591, 603 (D. Del. 1990) (merely acknowledging that under federal law, the
continuing violation doctrine may apply to a claim under 42 U.S.C. § 1983).

Plaintiffs also argue that no claims accrued until BANA resigned.  (*See* Opp'n at 20–21 & n.66.)
Plaintiffs' cited authority does not support this contention; it merely holds that laches, as
opposed to the statute of limitations, applies to unjust enrichment claims against a fiduciary.  *See*
*Cantor v. Perelman*, 414 F.3d 430, 439 (3d Cir. 2005).  Plaintiffs have not alleged such a claim.

Even if the PSAs *were* ambiguous, there is no cause to interpret the provisions at issue against *BANA*, as Plaintiffs do not allege that BANA drafted them.  *See Kuhn*, 990 A.2d at 397 (*contra proferentem* requires resolution of ambiguity "against the *drafting* party").[16]  Plaintiffs instead ask the Court to construe the PSAs in their favor because they are not parties to them, and BANA was, but they cite no authority in support of this novel "rule."  (Opp'n at 3.) [17]

### B.      Plaintiffs Have Not Alleged Breaches of Pre-EOD Duties

#### 1.      The PSAs Did Not Impose a General "Enforcement Duty" on BANA

The WaMu PSAs expressly provide that the trustee "shall *not* be obligated" to seek repurchase of loans subject to collateral document exceptions unless directed to do so by a sufficient number of certificateholders.  In contrast, the PSAs *do* expressly place an enforcement responsibility regarding document exceptions and R&W breaches on the *servicer*.  (*See* Mot. at 15–16, 22–23; *see* Ex. 2 at 3–7.)  Plaintiffs do not allege certificateholder direction, and instead assert that when the "servicer and the seller are the same" in WaMu deals, the Trustee takes on some ill-defined, generalized "enforcement duty."  (Opp'n at 4.)  Plaintiffs propose four sources for such a duty, but none can overcome the clear language of the PSAs.

Plaintiffs first argue that an enforcement duty arises from a duty of good faith.  (*Id.* at 7.)  But a generalized duty to act in good faith does not encompass a duty to take action "when the contract addresses the conduct at issue."  *Nationwide Emerging Managers, LLC v. Northpointe*

---

[16] Plaintiffs are also flat wrong when they claim, without citation, that defendants had "an absolute right to amend" the PSAs.  (Opp'n to U.S. Bank Mot. at 3.)  The WaMu PSAs impose numerous restrictions on amendment, including that any amendment requires agreement of all principal parties to the PSA (servicer, depositor, and trustee), and any amendment affecting certificateholders rights must be approved by 66% of certificateholders.  (*See* Ex. 1 § 10.01.)

[17] Plaintiffs also make vague allusions to the TIA and Streit Act, suggesting that both, and the history of the Great Depression generally, require construction against the trustees.  (Opp'n at 3; Opp'n to USB Brief at 3–4.)  But even if the TIA or Streit Act applied here (which they do not), Plaintiffs cannot point to any provision requiring construction against trustees.

*Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015).  Not only are the PSAs explicit that BANA "shall not be obligated to" pursue repurchases, but they also provide that the trustee undertakes to perform only "such duties … as are specifically set forth," and that "no implied covenants or obligations shall be read into this Agreement against the Trustee."  (Ex. 2 at 3–7, 19–21.)

Plaintiffs next contend a duty arises from a provision stating that when the trustee is "perform[ing] its obligations under this Agreement" it "shall at all times be acting on behalf of the Trust or the Certificateholders."  (Ex. 1 § 8.16; *see* Opp'n at 5–7.)  By its terms, this language does not create obligations; it merely explains that actions the trustee takes under the PSAs are not taken on its own behalf.  In addition to contradicting the PSAs' plain text, Plaintiffs' reading of this provision runs afoul of the rule that "[s]pecific language in a contract controls over general language."  *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005).

Plaintiffs also suggest that New York public policy required BANA to take action even when the contracts say it need not.  In fact, the law is just the opposite.  New York has long recognized that an RMBS "trustee's duties are 'strictly defined and limited to the terms of the indenture.'"  *Blackrock*, 165 F. Supp. 3d at 91 (quoting *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988)).  Plaintiffs offer no contrary authority.  They cite generally to New York's Streit Act (*see* Opp'n at 7), but as discussed in U.S. Bank's brief, the Act neither applies to these trusts, nor imposes duties on trustees. (*See* U.S. Bank Mot. at 28.)

Finally, Plaintiffs cite to *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 439020, at *5 (S.D.N.Y. Feb. 3, 2016) to argue that the PSAs impose an "express, not implied" enforcement duty.  (Opp'n at 7.)  But the PSAs in *Royal Park* provided that "the Trustee[] *shall enforce* the obligations of the Seller" under certain circumstances.  2016 WL 439020, at *8 n.2.  The WaMu PSAs *here* provide precisely the opposite.

-10-

### 2. Plaintiffs Have Failed to Plead That BANA Had Actual Knowledge of R&W Breaches

The WaMu PSAs explicitly condition any duty of the trustee to provide notice regarding R&W breaches on its having "actual knowledge" of such breaches. (Mot. at 17.)[18] Because Plaintiffs fail to allege facts plausibly suggesting that BANA obtained such actual knowledge, Plaintiffs' R&W-related claims fail. Plaintiffs' reliance on generalized public information does not show how BANA could have gained actual knowledge of loan-specific breaches absent an investigation that the PSAs expressly provided BANA need not undertake. (*See* Mot. at 17–22.)

Plaintiffs respond by asking the Court to *disregard* the "actual knowledge" standard imposed by the PSAs, by reading that term to establish a lower standard, such as implied knowledge or willful blindness. (Opp'n at 8.) In other words, Plaintiffs want the Court to hold that BANA could have "actual knowledge" of an R&W breach without *actually knowing* about that breach. This is absurd. Because Plaintiffs' allegations show, at best, that BANA may have heard claims about WaMu misconduct from public reports, Plaintiffs have not adequately alleged that BANA had the requisite actual knowledge of any R&W breaches.

Plaintiffs also misapprehend the relevance of the bankruptcy bar date for asserting proofs of claim against WaMu. (*See* Opp'n at 8 n.23.) The bar date is significant because even if BANA gained actual knowledge of a R&W breach after the bar date, Plaintiffs do not allege facts indicating that BANA could have sought repurchases from WaMu after that date, and thus

---

[18] Plaintiffs note that § 2.08 of the WaMu PSAs requires all parties to give notice of breaches of certain R&Ws of the depositor "upon discovery." (Opp'n at 6; Ex. 1 § 2.08.) But the FAC does not allege that the depositors breached such R&Ws, which were that "the Trust shall have good title to, and will be the sole legal owner of, each Mortgage Loan, free and clear of any encumbrance or lien, other than (i) any lien arising before the Company's purchase of the Mortgage Loan from the Seller and (ii) any lien arising under this Agreement." (Ex. 1 § 2.08; *see* FAC ¶¶ 89–90 (listing R&Ws from WaMu agreements).) By the same token, Plaintiffs have not alleged (even in conclusory fashion) that BANA had knowledge of any such breaches.

Plaintiffs do not allege facts indicating that BANA could have breached the PSAs by failing to seek repurchases (or facts showing the essential element of damages from BANA having not done so).  (Mot. at 18); *see Fixed Income Shares: Series M v. Citibank N.A.*, 2018 WL 1449580, at *4 (S.D.N.Y. Mar. 22, 2018) (granting summary judgment for trustee defendant because obligor entity's bankruptcy meant that trustee "could not have pursued any enforcement measures when it allegedly discovered breaches in or after 2009").  Thus, to state a claim, Plaintiffs must plead both that BANA gained actual knowledge of R&W breaches, *and* that it had such knowledge while it still could have taken some loss-avoiding action for the WaMu trusts.[19]  (Mot. at 8.)  Plaintiffs have not done so.  Instead, they concede that the public government reports they cite concerning WaMu all post-date December 2008.  (Opp'n at 8.)  Left with no relevant allegations as to BANA's knowledge (as opposed to WaMu's conduct), Plaintiffs throw up their hands and say that they hope to find evidence of knowledge in discovery.  (*See* Opp'n at 8–9.)  But Plaintiffs have a burden at the pleading stage to allege facts sufficient to "to raise a plausible inference of knowledge."  *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016).  They have not done so, so their R&W-related claims must be dismissed.[20]

### 3.  The Appointment of a Custodian Is Irrelevant to BANA's Arguments

Plaintiffs also argue that the "appointment of a custodian does not relieve BANA of liability."  (Opp'n at 5.)  BANA never argued that it did.  BANA's only obligation with respect

---

[19] As discussed in BANA's opening brief, WMALT 2007-4 presents a different analysis.  The relevant date for that trust is 2010, when BANA resigned as trustee.  (*See* Mot. at 8.)

[20] Plaintiffs also claim the information they cite extends beyond the subprime originator Long Beach, but cite *nothing* for this proposition.  (*See* Opp'n at 9.)  While some of Plaintiffs' scattershot sources contain vague references to WaMu generally, the primary cites from government reports concern only subprime loans originated by Long Beach.  (*See* Mot. at 20.)

to document exceptions in the WaMu PSAs was to prepare and transmit an exception report, or appoint a custodian to do so. (*See* Mot. at 15.) Plaintiffs *expressly allege* that BANA did prepare exception reports or appoint custodians to do so, and therefore that BANA complied with these duties under the WaMu PSAs. (*See* FAC ¶¶ 101, 119, 123, 125, 127, 143.)

### C.   Plaintiffs Have Not Alleged an EOD or a Breach of Post-EOD Duties

As detailed by U.S. Bank, Plaintiffs' post-EOD claims are foreclosed by the First Department's controlling decision in *Fixed Income Shares: Series M v. Citibank, N.A.*, 157 A.D.3d 541 (2018), which rejects Plaintiffs' prevention doctrine theory; and by the PSAs, which impose post-EOD duties only after specific prerequisites. (*See* U.S. Bank Reply, Part I.E.)

Further, because the WaMu PSAs obligate servicers to take only "appropriate steps" to address document exceptions, and because there was no strict time period for them to do so, the existence of mere collateral exceptions could not have given BANA knowledge of a servicer *breach*, much less of an EOD. (Mot. at 25–26.)[21] Plaintiffs respond, without explanation, that if BANA did not know of servicer breaches, it would "constitute negligence forbidden by the PSAs," and that knowledge is a fact issue. (Opp'n at 12.) There can be no negligence in the absence of a duty to act a certain way, and there is nothing negligent about BANA not knowing what actions servicers are taking when the PSAs impose no obligation to supervise servicers.

---

[21] Plaintiffs indulge their own wishful thinking when they assert that "BANA does not contest that (i) the servicer had an obligation to remediate mortgages with defective documentation; (ii) BANA knew of mortgages with defective documentation from its preparation or receipt of loan-by-loan exception reports; (iii) BANA knew that the documentation defects were not remedied by cure or repurchase; and (iv) BANA could have notified the servicer of these breaches." (Opp'n at 11.) In reality, (i) the servicer's obligation was merely to take "appropriate steps," which could include waiting for a document to return from a recording office; (ii) the exception reports represent only a snapshot of the status of mortgage loans at a point in time; (iii) BANA had no direct knowledge of what actions servicers were or were not taking with respect to particular loans; and (iv) BANA thus lacked the loan-specific knowledge necessary to give notice of any specific alleged breach. (*See* Mot. at 25–26; U.S. Bank Mot. at 15–18.)

**III.   PLAINTIFFS HAVE NOT STATED A TORT CLAIM AGAINST BANA**[22]

**A.   Delaware Law Governs Plaintiffs' Tort Claims on the WaMu Trusts**

The broad language of the WaMu PSAs' choice-of-law clauses requires application of

Delaware tort law.  (*See* Mot. at 29); *see also Capital Z Fin. Servs. Fund II, L.P. v. Health Net,*

*Inc.*, 43 A.D.3d 100, 103, 109–10 (2007) (clause covered tort claims where it provided that

Delaware law governed "the construction of its terms and the interpretation and enforcement *of*

*the rights and duties of the parties*").  Plaintiffs' cited authorities, which involved choice-of-law

clauses that were expressly limited to the *interpretation* of the contracts at issue, do not say

otherwise.  *See, e.g.*, *Mayagüez S.A. v. Citigroup, Inc.*, 2018 WL 1587597, at *6 (S.D.N.Y. Mar.

28, 2018) ("This Agreement will be governed by and construed in accordance with the laws of

the State of New York.").[23]  The WaMu choice-of-law clauses are not so limited, and extend to

the "obligations, rights and remedies of the parties."  (Ex. 2 at 29–30.)

**B.   Plaintiffs Have Not Stated a Tort Claim Under Delaware Law**

Plaintiffs' tort claims fail under Delaware law, because Delaware does not impose the

two extra-contractual duties Plaintiffs invoke.  (*See* Mot. at 30.)  Plaintiffs offer no contrary

authority.  Instead, they rely on an inapposite case holding that the existence of a contract

generally does not bar a *conversion* claim, *see Data Mgmt. Internationale, Inc. v. Saraga*, 2007

---

[22] Plaintiffs' New York tort claims should be dismissed for the reasons explained in U.S. Bank's briefs, including for the MSM 2006-7 trust, which is governed by New York law.  (*See* U.S. Bank Mot. at 27–28; U.S. Bank Reply, Part II.)  Plaintiffs' opposition is incorrect when it states BANA does not challenge Plaintiffs' tort claims under New York Law.  (*See* Mot at 1, 29, 30.)

[23] *See also Knieriemen v. Bache Halsey Stuart Shields Inc.*, 74 A.D.2d 290, 293 (1980) ("This contract shall be governed by the laws of the State of New York."); *Bentley v. Equity Tr.*, 2015 WL 7254796, at *5 (Ohio Ct. App. Nov. 16, 2015) ("This Agreement . . . shall be governed by and construed under the applicable laws of the State of Ohio."); *Klock v. Lehman Bros. Kuhn Loeb Inc.*, 584 F. Supp. 210, 215 (S.D.N.Y. 1984) ("'This agreement' shall be governed by the laws of the State of New York.").

WL 2142848, at *3–4 (Del. Super. Ct. July 25, 2007), and on a bankruptcy court decision

applying New York law, *In re Oakwood Homes Corp.*, 340 B.R. 510, 520 (Bankr. D. Del. 2006).

Neither supports the imposition of extra-contractual tort duties against an RMBS trustee under

Delaware law, especially where the contracts disclaim such duties.  (*See* Ex. 2 at 19–21.)[24]

## IV.    PLAINTIFFS' REMAINING CLAIMS FAIL AS TO BANA

The remainder of Plaintiffs' claims fail for the reasons discussed in U.S. Bank's briefs.

## V.    PLAINTIFFS HAVE NOT ESTABLISHED STANDING WITH REGARD TO CERTIFICATES THEY SOLD

Far from establishing standing to sue, Plaintiffs' opposition merely raises more questions.

Plaintiffs' submitted declaration says nothing about the agreements by which they sold the

RMBS (nor does the declaration attach copies).  Although Plaintiffs assert the "employees of the

entities that bought the Sold Certificates" were in California, they confirm that many RMBS

were sold to New York-based firms, including Morgan Stanley and JPMorgan, raising the

distinct possibility that New York law applies and automatically transferred claims to the

purchasers.  (*See* Fiek Decl. ¶ 4.)  Thus, Plaintiffs still "leave too many questions unanswered" to

satisfy Plaintiffs' burden of pleading standing as to certificates they have sold.  *Phoenix Light SF*

*Ltd. v. U.S. Bank Nat. Ass'n*, 2015 WL 2359358, at *2 (S.D.N.Y. May 18, 2015).

## CONCLUSION

For the reasons stated above and in U.S. Bank's separate briefs, Plaintiffs' claims against

BANA should be dismissed in their entirety and with prejudice.

---

[24] Plaintiffs also cite to language in the PSAs stating that the agreements shall not "be construed to *relieve* the Trustee . . . from liability for its own negligent action" or failure to act.  (Ex. 1 § 8.01(c); *see* Opp'n at 17.)  But this provision—which immediately precedes language reiterating that the trustee's duties are limited to those "specifically set forth"—merely describes the standard applicable to the trustee's performance of its existing duties; it does not purport to expand those duties.

Respectfully submitted,

Dated:  May 21, 2018

BANK OF AMERICA, N.A.

By: _____/s/ James C. Rutten_____
  MUNGER, TOLLES & OLSON LLP
  James C. Rutten
  Jacob S. Kreilkamp
  Wesley T.L. Burrell
  Matthew K. Donohue
  350 South Grand Avenue, 50th Floor
  Los Angeles, California  90071-3426
  (213) 683-9100; (213) 687-3702 (fax)
  james.rutten@mto.com
  jacob.kreilkamp@mto.com
  wesley.burrell@mto.com
  matthew.donohue@mto.com

SIDLEY AUSTIN LLP
David F. Graham
One South Dearborn Street
Chicago, Illinois  60603
(312) 853-7000; (312) 853-7036 (fax)
dgraham@sidley.com

SIDLEY AUSTIN LLP
Isaac S. Greaney
Daniel Gimmel
Jon W. Muenz
787 Seventh Avenue
New York, New York  10019
(212) 839-5300; (212) 853-5599 (fax)
igreaney@sidley.com
dgimmel@sidley.comjmuenz@sidley.com

*Attorneys for Defendant Bank of America, N.A.*