# EXHIBIT 2

EX-4.6 2 exh46to8k.htm

[Click here for printer-friendly pdf version of this document with page breaks as indicated in the Table of Contents](#)

*If above link does not activate, you will find the duplicate printer-friendly pdf version of this document attached to this filing submission with the SEC.*

---

**EXHIBIT 4.6**

---

**MORTGAGE LOAN PURCHASE AND SALE AGREEMENT**

**Among**

**Washington Mutual Bank**
**Washington Mutual Bank fsb**
**(Sellers)**

**and**

**WaMu Asset Acceptance Corp.**
**(Purchaser)**

**Dated as of October 25, 2005**

**Residential First Lien Mortgage Loans**
**Flow Delivery Program**

---

**TABLE OF CONTENTS**

|  | Page |
| --- | --- |
| ARTICLE 1. DEFINITIONS | 2 |

| | |
|---|---|
| **ARTICLE 2. SALE AND CONVEYANCE OF MORTGAGE LOANS; PAYMENT OF PURCHASE PRICE;  DELIVERY OF MORTGAGE FILES;** | 18 |
| Section 2.1  Sale and Conveyance of Mortgage Loans; Payment of Purchase Price | 18 |
| Section 2.2  Delivery of Mortgage Files | 20 |
| Section 2.3  Recordation of Mortgages and Assignments of Mortgages | 20 |
| Section 2.4  Repurchases of and Substitutions for Defective Mortgage Loans | 21 |
| **ARTICLE 3. REPRESENTATIONS AND WARRANTIES OF THE SELLER CONCERNING THE MORTGAGE LOANS; REPURCHASE OR SUBSTITUTION OF MORTGAGE LOANS** | 27 |
| Section 3.1  Seller Representations and Warranties Concerning the Mortgage Loans | 27 |
| Section 3.2  Additional Seller Representations and Warranties | 36 |
| Section 3.3  Repurchases and Substitutions in the Event of Breach of Seller Representations and Warranties | 40 |
| **ARTICLE 4. COVENANTS** | 43 |
| Section 4.1  Cooperation | 43 |
| Section 4.2  Representations, Warranties, Covenants and Indemnities | 43 |
| Section 4.3  Delivery of Documents | 43 |
| Section 4.4  Consents and Approvals | 44 |
| Section 4.5  Confidentiality | 44 |
| **ARTICLE 5. CONDITIONS TO PURCHASE** | 45 |
| Section 5.1  Required Documents | 45 |
| Section 5.2  Correctness of Representations and Warranties | 45 |
| Section 5.3  Compliance With Conditions | 46 |
| Section 5.4  Costs | 46 |
| **ARTICLE 6. SALE PURSUANT TO POOLING AND SERVICING AGREEMENT** | 47 |
| Section 6.1  Servicing Agreement: Sellers' Consent to Assignment | 47 |
| Section 6.2  Indemnification | 48 |
| **ARTICLE 7. MISCELLANEOUS PROVISIONS** | 50 |
| Section 7.1  Amendment | 50 |
| Section 7.2  Recordation of Agreement | 50 |
| Section 7.3  Governing Law | 51 |
| Section 7.4  General Interpretive Principles | 51 |
| Section 7.5  Notices | 52 |
| Section 7.6  Severability of Provisions | 54 |
| Section 7.7  Exhibits | 54 |
| Section 7.8  Counterparts; Successors and Assigns | 55 |
| Section 7.9  Effect of Headings | 55 |
| Section 7.10  Other Agreements Superseded | 55 |
| Section 7.11  Intention of the Parties | 56 |
| Section 7.12  Nonsolicitation | 56 |
| Section 7.13 Obligations of the Sellers | 58 |
| Section 7.14  Attorneys' Fees | 58 |
| Section 7.15  Security Interest | 58 |
| Section 7.16  Covenant Not to Place Purchaser or Trust Into Bankruptcy | 60 |

<u>Sale</u>:  The sale of Mortgage Loans by the Purchaser to a Trust pursuant to a Pooling and Servicing Agreement.

<u>Security Agreement</u>:  With respect to a Cooperative Loan, the agreement or mortgage creating a security interest in favor of the originator of the Cooperative Loan in the related Cooperative Stock.

<u>Seller</u>:  Each of Washington Mutual Bank and Washington Mutual Bank fsb, and its respective assigns and successors in interest.

<u>Seller Officer's Certificate</u>:  A certificate signed by the Chairman of the Board, the President, any Vice President or the Treasurer of the applicable Seller

<u>Seller's Information</u>:  As defined in Section 6.2(a).

<u>Servicer</u>:  As defined in the related Pooling and Servicing Agreement.

<u>Servicing Fee Rate</u>:  With respect to each Mortgage Loan, the percentage set forth as such for such Mortgage Loan in the Mortgage Loan Schedule.

<u>Streamlined Mortgage Loan</u>:  A Mortgage Loan originated in connection with the refinance of a mortgage loan pursuant to the streamlined loan documentation program then in effect of the related Seller.

<u>Substitute Mortgage Loan</u>:  A Mortgage Loan that is substituted for another Mortgage Loan pursuant to and in accordance with the provisions of Section 2.4 or 3.3.

<u>Substitution Price</u>:  With respect to all Reacquired Mortgage Loans for which Substitute Mortgage Loans are substituted by a Seller on a specific date pursuant to Section 2.4 or 3.3, an amount equal to the sum of (i) the excess, if any, of the aggregate Principal Balance of the Reacquired Mortgage Loans over the aggregate Principal Balance of the Substitute Mortgage Loans, in each case, as of the date of substitution, (ii) one month's interest at the weighted average Net Rate for the Reacquired Mortgage Loans on an amount equal to the sum of (A) the excess amount described in clause (i) above and (B) the aggregate amount of all principal due but unpaid on the Reacquired Mortgage Loans under the terms of the related Mortgage Notes to the extent not covered by an advance by the Servicer pursuant to the related Pooling and Servicing Agreement, (iii) the aggregate amount of all principal and interest due but unpaid on the Reacquired Mortgage Loans under the terms of the related Mortgage Notes (whether or not covered by an advance by the Servicer pursuant to the related Pooling and Servicing Agreement), (iv) the aggregate amount of all unreimbursed advances of reimbursable expenses made by the Servicer with respect to such Reacquired Mortgage Loans pursuant to the related Pooling and Servicing Agreement and (v) the aggregate amount of all costs and damages incurred by the Purchaser or its transferee in connection with any violations by such Reacquired Mortgage Loans of any predatory and abusive lending laws, to the extent such costs and damages result from a breach of the representation and warranty made by such Seller pursuant to Section 3.1(vii); *provided, however,* that to the extent that such costs and damages constitute a set-off against the principal balance of the related Reacquired Mortgage Loan, such costs and damages will not be paid pursuant to this clause (v), and the amount paid pursuant to clause (i) above will be calculated without regard to such set-off.

<u>Term Sheet</u>:  A term sheet with respect to the Mortgage Loans purchased by the Purchaser from a Seller on a Closing Date, in substantially the form attached hereto as **Exhibit B**.

<u>Trust</u>:  The trust created in connection with the related Pooling and Servicing Agreement.

<u>Trustee</u>:  As defined in the related Pooling and Servicing Agreement.

<u>Underwriting Standards</u>:  For each Mortgage Loan, the underwriting standards applicable to the origination of such Mortgage Loan.

<u>VA</u>:  The Department of Veterans Affairs (formerly known as the Veterans Administration) and any successor thereto.

**ARTICLE 2.**

**SALE AND CONVEYANCE OF MORTGAGE LOANS**

PAYMENT OF PURCHASE PRICE;
DELIVERY OF MORTGAGE FILES;

Section 2.1.       Sale and Conveyance of Mortgage Loans; Payment of Purchase Price

(a)    On each Closing Date, upon the receipt of the applicable Purchase Price, each Seller that is selling Mortgage Loans to the Purchaser on such Closing Date shall deliver to the Purchaser a Term Sheet and a Confidential Pricing Supplement with respect to the Mortgage Loans sold by such Seller. As set forth in such Term Sheet, each Seller sells, transfers, assigns, sets over, and conveys to the Purchaser, without recourse, but subject to the representations, warranties, terms and provisions of this Agreement and such Term Sheet, all the right, title, and interest of such Seller in and to the Mortgage Loans described in the Mortgage Loan Schedule attached to such Term Sheet.

(b)    In payment of the purchase price for each of the Mortgage Loans pursuant to Section 2.1(a) and the applicable Term Sheet, and upon the terms and conditions of this Agreement, on the related Closing Date the Purchaser shall pay to the applicable Seller or Sellers by wire transfer of immediately available funds the applicable Purchase Price for each Mortgage Loan purchased on such Closing Date.

(c)    As of each Closing Date, the Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased on such Closing Date all Monthly Payments due after the applicable Cut-Off Date, and all other payments and recoveries of principal and interest received on or after such Cut-Off Date, other than payments that were due on or prior to such Cut-Off Date.

(d)    On or before each Closing Date, the applicable Seller or Sellers shall deliver to the Purchaser with the related Term Sheet the related Mortgage Loan Schedule, which shall be in hard copy or "read-only" electronic format (as reasonably acceptable to such Seller and the Purchaser).

Section 2.2.       Delivery of Mortgage Files

Each Seller shall deliver or cause to be delivered to the Purchaser or its designee (which may be a Custodian), with respect to each Mortgage Loan sold by such Seller hereunder, on or before the related Closing Date, at such Seller's expense, each of the items or documents with respect to such Mortgage Loan required to be included in the Mortgage File pursuant to the definition thereof.

Section 2.3.       Recordation of Mortgages and Assignments of Mortgages

With respect to each Mortgage Loan (other than any Mortgage Loan for which a Payoff has been made after the related Cut-Off Date and prior to the related Closing Date), in instances where, due to a delay on the part of the recording office, any Recording Documents are not included in the Mortgage File delivered to the Purchaser or its designee on or before the related Closing Date, the applicable Seller shall transmit the Recording Documents to the Purchaser or its designee within 270 days after the related Closing Date. In instances where, due to a delay on the part of the recording office where any such Recording Documents have been delivered for recordation, the Recording Documents cannot be delivered to the Purchaser or its designee within 270 days after such Closing Date, such Seller shall deliver to the Purchaser or its designee within such time period a Seller Officer's Certificate stating the date by which such Seller expects to receive such Recording Documents from the applicable recording office. In the event that Recording Documents have still not been received by such Seller and delivered to the Purchaser or its designee by the date specified in its previous Seller Officer's Certificate delivered to the Purchaser or its designee, such Seller shall deliver to the Purchaser or its designee by such date an additional Seller Officer's Certificate stating a revised date by which such Seller expects to receive the applicable Recording Documents. This procedure shall be repeated until the Recording Documents have been received by such Seller and delivered to the Purchaser or its designee.

Section 2.4.       Repurchases of and Substitutions for Defective Mortgage Loans

(a)    Upon receipt of notice from the Purchaser that any document, required to be included (pursuant to the definition of "Mortgage File") in the Mortgage File delivered to the Purchaser or its designee with respect to a Mortgage Loan sold by a Seller hereunder, was not included therein or has not been executed, such Seller shall correct or cure such defect within 60 days from the date such Seller receives notice thereof or, if such defect cannot be corrected or cured within such 60-day period, such Seller shall, not later than the expiration of such 60-day period, either (a) repurchase such Mortgage Loan from the Purchaser or its transferee at the Repurchase Price or (b) within the three-month period commencing on the related Closing Date (or within the two-year period commencing on such Closing Date if the related Mortgage Loan is a "defective obligation" within the meaning of Section 860G(a)

(4)(B)(ii) of the Code and Treasury Regulation Section 1.860G-2(f)), substitute for such Mortgage Loan one or more Substitute Mortgage Loans each of which is a "qualified replacement mortgage" (as defined in the Code); provided, however, that in the event that such defect consists solely of the failure of such Seller to deliver any Recording Document with respect to such Mortgage Loan, due to a delay on the part of the recording office, then such Seller shall not be required to repurchase or substitute for such Mortgage Loan. If such defect would cause the Mortgage Loan to be other than a "qualified mortgage" (as defined in the Code), then notwithstanding the previous sentence, the repurchase or substitution must occur within the sooner of (i) 90 days from the date the defect was discovered by such Seller, the Purchaser or any other party to the related Pooling and Servicing Agreement or (ii) in the case of substitution, two years from the related Closing Date.

(b)   Any number of Substitute Mortgage Loans may be substituted for any number of Reacquired Mortgage Loans, subject to the limitations described in the next sentence. With respect to the Mortgage Loans substituted on any date, (i) the aggregate Principal Balance of the Substitute Mortgage Loans shall not exceed the aggregate Principal Balance of the Reacquired Mortgage Loans, (ii) each Substitute Mortgage Loan shall mature no later than, and not more than two years earlier than, the weighted average date of maturity of the Reacquired Mortgage Loans, (iii) each Substitute Mortgage Loan shall have a Current Loan-to-Value Ratio equal to or less than the weighted average Current Loan-to-Value Ratio of the Reacquired Mortgage Loans, (iv) each Substitute Mortgage Loan shall have a Mortgage Interest Rate on the date of substitution equal to or no more than 1 percentage point greater than the weighted average Mortgage Interest Rate of the Reacquired Mortgage Loans, (v) if the Reacquired Mortgage Loans do not provide for any payments of principal during an initial period, each Substitute Mortgage Loan also shall not provide for payments of principal during such initial period and (vi) if the Reacquired Mortgage Loans are ARM Loans, then each Substitute Mortgage Loan shall (1) if applicable, have an Initial Interest Rate Adjustment Date occurring on approximately the same date as, but not earlier than, the weighted average Initial Interest Rate Adjustment Date of the Reacquired Mortgage Loans and interest rate adjustments thereafter at the same frequency as the Reacquired Mortgage Loans, (2) if applicable, have a Margin, Rate Ceiling and Rate Floor equal to or greater than the weighted average Margin, Rate Ceiling and Rate Floor of the Reacquired Mortgage Loans, (3) have the same terms (other than the terms referenced in clauses (1) and (2) above) for adjusting the Mortgage Interest Rate as the Reacquired Mortgage Loans and (4) if applicable, have the same terms for adjusting the amount of the minimum monthly payment as the Reacquired Mortgage Loans. Furthermore, the applicable Seller shall be deemed to have made as of the date of substitution the representations and warranties set forth in Section 3.1 as to such Substitute Mortgage Loan (except that references to "Closing Date" and "Cut-Off Date" in such Section 3.1 shall be deemed to be references to the date of substitution). In addition, a Substitute Mortgage Loan shall not be a High Cost Loan or Covered Loan (as such terms are defined in the Standard & Poor's LEVELS® Glossary in effect on the date of substitution, with such exceptions thereto as the Purchaser and Standard & Poor's Ratings Services may reasonably agree). A Substitute Mortgage Loan may be substituted for a defective Mortgage Loan that is itself a Substitute Mortgage Loan.

(c)   In connection with the substitution of one or more Substitute Mortgage Loans for one or more Reacquired Mortgage Loans on any date, the applicable Seller shall pay to the Purchaser the Substitution Price for such Reacquired Mortgage Loans.

(d)   Concurrently with each such substitution, the applicable Seller shall deliver to and deposit with, or cause to be delivered to and deposited with, the Purchaser or its designee the Mortgage File for each Substitute Mortgage Loan. Upon such substitution, the Substitute Mortgage Loan shall be subject to the terms of this Agreement, to the extent applicable (including, without limitation, the Seller's obligations with respect to the Substitute Mortgage Loan pursuant to this Section 2.4 and Sections 2.3 and 3.3). The Seller and the Purchaser shall amend the Mortgage Loan Schedule in a timely fashion to delete all repurchased Mortgage Loans and Reacquired Mortgage Loans and add all Substitute Mortgage Loans.

(e)   The applicable Seller shall pay any Repurchase Price or Substitution Price by such method as is specified by the Purchaser in writing.

(f)   With respect to each repurchased Mortgage Loan or Reacquired Mortgage Loan, the applicable Seller shall own and be entitled to receive all scheduled payments due after the date of repurchase or substitution, as applicable, any Curtailments received in or after the calendar month of repurchase or substitution, as applicable, and any Payoff received after the 14th day of the calendar month of repurchase or substitution, as applicable; and with respect to each Substitute Mortgage Loan, the applicable Seller shall own and be entitled to receive all payments due under the related Mortgage Note on or before the date of substitution. Any such payments received by the Purchaser or its transferee shall promptly be remitted by the Purchaser to such Seller. With respect to each Substitute Mortgage Loan, the Purchaser shall own and be entitled to receive all scheduled payments due after the date of repurchase or substitution, as applicable, any Curtailments received in or after the calendar month of repurchase or substitution, as applicable, and any Payoff received after the 14th day of the calendar month of repurchase or substitution, as applicable. Any such payments received by the applicable Seller shall promptly be remitted by the Seller to the Purchaser or its transferee.

(g)   Upon receipt by the Purchaser of the Repurchase Price or the Substitution Price, as applicable, and (in the case of a substitution for a Mortgage Loan pursuant to this Section 2.4 or Section 3.3) upon receipt by the Purchaser of such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in the Purchaser title to any

Substitute Mortgage Loan, the Purchaser shall release to the applicable Seller the Mortgage File for the repurchased Mortgage Loan or the Reacquired Mortgage Loan, as applicable, and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in such Seller title to such Mortgage Loan.

(h)     Each Seller shall pay all costs and expenses incurred in connection with any repurchase or substitution by such Seller made pursuant to this Section 2.4 or Section 3.3.

(i)      It is understood and agreed that the obligations of a Seller set forth in this Section 2.4 constitute the sole remedies available to the Purchaser or its transferee respecting such Seller's failure to include in the Mortgage File for a Mortgage Loan sold by such Seller the documents required to be included therein.

<br>

**ARTICLE 3.**

**REPRESENTATIONS AND WARRANTIES OF
THE SELLERS CONCERNING THE MORTGAGE LOANS;
REPURCHASE OR SUBSTITUTION OF MORTGAGE LOANS**

Section 3.1.      Seller Representations and Warranties Concerning the Mortgage Loans

Each of the Sellers hereby, severally and not jointly, represents and warrants to and covenants to and agrees with the Purchaser that, as to each Mortgage Loan sold by such Seller hereunder, as of the related Cut-Off Date unless otherwise indicated, subject in all cases (including, without limitation, clauses (iv), (xi) and (xviii)) to such exceptions, if any, as are set forth on Schedule III to the related Term Sheet:

(i)      The information set forth in the Mortgage Loan Schedule delivered on the Closing Date was true and correct in all material respects at the date or dates respecting which such information is furnished;

(ii)     As of the Closing Date, each Mortgage relating to a Mortgage Loan that is not a Cooperative Loan is a valid and enforceable (except as such enforceability may be limited by laws affecting the enforcement of creditors' rights generally and principles of equity) first lien on an unencumbered estate in fee simple or (if the related Mortgage Loan is secured by the interest of the Mortgagor as a lessee under a ground lease) leasehold estate in the related Mortgaged Property subject only to (a) liens for current real property taxes and special assessments; (b) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording such Mortgage, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected in the appraisal obtained in connection with the origination of the Mortgage Loan; (c) exceptions set forth in the title insurance policy relating to such Mortgage, such exceptions being acceptable to mortgage lending institutions generally; and (d) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage;

(iii)     Immediately upon the transfer and assignment contemplated herein, the Purchaser shall have good title to, and will be the sole legal owner of, each Mortgage Loan, free and clear of any encumbrance or lien (other than any lien under this Agreement);

(iv)     Except as set forth on Schedule III to the Term Sheet, if applicable, as of the day prior to the Cut-Off Date, all payments due on each Mortgage Loan had been made and no Mortgage Loan had been delinquent (i.e., was more than 30 days past due) more than once in the preceding 12 months and any such delinquency lasted for no more than 30 days;

(v)      As of the Closing Date, there is no offset, defense or counterclaim to any Mortgage Note, including the obligation of the Mortgagor to pay the unpaid principal or interest on such Mortgage Note, except to the extent that the Buydown Agreement for a Buydown Loan forgives certain indebtedness of a Mortgagor;

(vi)     As of the Closing Date, each Mortgaged Property is free of damage and in good repair, ordinary wear and tear excepted;

(vii)     Each Mortgage Loan at the time it was made complied with all applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, disclosure and recording laws, and predatory and abusive lending laws applicable to the originating lender;

(viii)     Each Mortgage Loan was originated by (a) the Seller, (b) a savings association, savings bank, bank, credit union, insurance company or similar institution which is supervised and examined by a federal or state authority or (c) a mortgagee approved by the FHA;

(ix)      As of the Closing Date, each Mortgage Loan that is not a Cooperative Loan is covered by an ALTA form or CLTA form of mortgagee title insurance policy, or other form of policy of insurance acceptable to Fannie Mae or Freddie Mac as of the origination date of such Mortgage Loan, which has been issued by, and is the valid and binding obligation of, a title insurer which, as of the origination date of such Mortgage Loan, was qualified to do business in the state in which the related Mortgaged Property is located. Such policy insures the originator of the Mortgage Loan and its successors and assigns as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan subject to the exceptions set forth in such policy. Such policy is in full force and effect and inures to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement and no claims have been made under such policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such policy;

(x)       Except as set forth on Schedule III to the Term Sheet, if applicable, each Mortgage Loan with both (a) an Original Loan-to-Value Ratio and (b) a Current Loan-to-Value Ratio in excess of 80% was covered, as of the Cut-Off Date, by a Primary Insurance Policy or an FHA insurance policy or a VA guaranty, and such policy or guaranty is valid and remains in full force and effect;

(xi)      The Mortgage Note related to (a) each Mortgage Loan (other than a Cooperative Loan) requires the related Mortgagor to maintain a policy of hazard insurance, with extended coverage in an amount which is not less than the original principal balance of such Mortgage Loan, except in cases in which such original principal balance exceeds the value of the improvements to the Mortgaged Property, and (b) each Mortgage Loan (other than a Cooperative Loan) with respect to which any part of any improvement to the related Mortgaged Property is located in a federally designated special flood hazard area and in a community which participates in the National Flood Insurance Program at the time of origination of such Mortgage Loan, requires the related Mortgagor to maintain a policy of flood insurance;

(xii)     As of the Closing Date, all taxes, governmental assessments, insurance premiums, leasehold payments or ground rents that have become due and payable with respect to each Mortgaged Property have been paid or an escrow of funds sufficient to pay them has been established;

(xiii)    As of the Closing Date, each insurer issuing a Primary Insurance Policy holds a rating acceptable to the Rating Agencies;

(xiv)     Each Mortgage (exclusive of any riders thereto) was documented by appropriate Fannie Mae/Freddie Mac mortgage instruments in effect at the time of origination, or other instruments approved by the Seller;

(xv)      As of the Closing Date, the Mortgaged Property securing each Mortgage relating to a Mortgage Loan that is not a Cooperative Loan is improved with a one- to four-family dwelling unit, including units in a duplex, triplex, fourplex, condominium project, townhouse, a planned unit development or a de minimis planned unit development;

(xvi)     As of the Closing Date, each Mortgage and Mortgage Note is the legal, valid and binding obligation of the maker thereof and is enforceable in accordance with its terms, except only as such enforceability may be limited by laws affecting the enforcement of creditors' rights generally and principles of equity;

(xvii)    As of the date of origination, as to Mortgaged Properties which are units in condominiums or planned unit developments, all of such units met the applicable Underwriting Standards, are located in a condominium or planned unit development projects which have received Fannie Mae or Freddie Mac approval, or are approvable by Fannie Mae or Freddie Mac or have otherwise been approved by the Seller;

(xviii)   Except as set forth on Schedule III to the Term Sheet, if applicable, no Mortgage Loan is a Buydown Loan;

(xix)     Prior to origination or refinancing, an appraisal of each Mortgaged Property was made by an appraiser on a form satisfactory to Fannie Mae or Freddie Mac;

(xx)      The Mortgage Loans have been underwritten substantially in accordance with the applicable Underwriting Standards;

(xxi)      All of the Mortgage Loans have due-on-sale clauses; however, the due on sale provisions may not be exercised at the time of a transfer if prohibited by law or the terms of the related Mortgage Note;

(xxii)      The Seller used no adverse selection procedures in selecting the Mortgage Loans from among the outstanding mortgage loans of the same type originated or purchased by it which were available for sale to the Purchaser and as to which the representations and warranties in this Section 3.1 could be made;

(xxiii)      If such Mortgage Loan is a Cooperative Loan, the Cooperative Stock that is pledged as security for the Cooperative Loan is held by a person as a tenant-stockholder (as defined in Section 216 of the Code) in a cooperative housing corporation (as defined in Section 216 of the Code);

(xxiv)      If such Mortgage Loan is a Cooperative Loan, it is secured by a valid, subsisting and enforceable (except as such enforceability may be limited by laws affecting the enforcement of creditors' rights generally and principles of equity) perfected first lien and security interest in the related Cooperative Stock, subject only to (a) liens of the Cooperative for unpaid assessments representing the Mortgagor's pro rata share of the Cooperative's payments for its blanket mortgage, current and future real property taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject, and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement;

(xxv)      With respect to any Mortgage Loan as to which an affidavit has been delivered by the Seller to the Purchaser or its assignee certifying that the original Mortgage Note is a Destroyed Mortgage Note, if such Mortgage Loan is subsequently in default, the enforcement of such Mortgage Loan or of the related Mortgage will not be materially adversely affected by the absence of the original Mortgage Note (or portion thereof, as applicable);

(xxvi)      Each Mortgage Loan constitutes a "qualified mortgage" under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9);

(xxvii)      No Mortgage Loan is a High Cost/Covered Loan, and no Mortgage Loan originated during the period of October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;

(xxviii)      No Mortgage Loan is subject to the Home Ownership and Equity Protection Act of 1994 or Section 226.32 of Regulation Z, is a "high-cost" loan or a "predatory" loan as defined under any state or local law or regulation applicable to the originator of such Mortgage Loan or which would result in liability to the purchaser or assignee of such Mortgage Loan under any predatory or abusive lending law, or, without limiting the generality of the foregoing, is a "covered" loan under the laws of the states of California, Colorado or Ohio; and

(xxix)      No Mortgage Loan has a Closing Date Loan-to-Value Ratio greater than 100%.

Section 3.2.      Additional Seller Representations and Warranties

Each of the Sellers hereby, severally and not jointly, represents and warrants to the Purchaser as to such Seller as of each Closing Date on which such Seller sells Mortgage Loans hereunder, and with respect to such Mortgage Loans, as of such Closing Date:

(i)      If the Seller is Washington Mutual Bank, the Seller is a federal savings association, duly organized, validly existing and in good standing under the laws of the United States. If the Seller is Washington Mutual Bank fsb, the Seller is a federal savings bank, duly organized, validly existing and in good standing under the laws of the United States.

(ii)      The Seller has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the Mortgaged Properties are located if the laws of such states require licensing or qualification in order to conduct business of the type conducted by the Seller and to the extent necessary to ensure the enforceability of each Mortgage Loan. The Seller has the corporate power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, to enter into, execute and deliver this Agreement, the Term Sheet, the Confidential Pricing Supplement and all documents and instruments executed and delivered pursuant hereto and to perform its obligations in accordance