# EXHIBIT 3

4/19/2018                               https://www.sec.gov/Archives/edgar/data/1317069/000095011705004965/ex4-7.txt
                    Case 1:16-cv-00555-PGG Document 141-3 Filed 05/21/18 Page 2 of 19

```
<DOCUMENT>
<TYPE>EX-4
<SEQUENCE>6
<FILENAME>ex4-7.txt
<DESCRIPTION>EXHIBIT 4.7
<TEXT>

<PAGE>
```

                                                                     Exhibit 4.7

================================================================================

                    MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

                                     Between

                   Washington Mutual Mortgage Securities Corp.
                                    (Seller)

                                      and

                           WaMu Asset Acceptance Corp.
                                   (Purchaser)

                         Dated as of December 28, 2005

                       Residential First Lien Mortgage Loans
                             Flow Delivery Program

================================================================================

```
<PAGE>
```

                                TABLE OF CONTENTS

```
<TABLE>
<CAPTION>
```

                                                                            Page
                                                                            ----
<S>                                                                         <C>
   ARTICLE 1. DEFINITIONS..................................................   1

   ARTICLE 2. SALE AND CONVEYANCE OF MORTGAGE LOANS; PAYMENT OF PURCHASE
      PRICE; DELIVERY OF MORTGAGE FILES;...................................   9
      Section 2.1.    Sale and Conveyance of Mortgage Loans; Payment of
                      Purchase Price.......................................   9
      Section 2.2.    Delivery of Mortgage Files...........................   9
      Section 2.3.    Recordation of Mortgages and Assignments of
                      Mortgages............................................  10
      Section 2.4.    Repurchases of and Substitutions for Defective
                      Mortgage Loans.......................................  10

   ARTICLE 3. REPRESENTATIONS AND WARRANTIES OF THE SELLER CONCERNING THE
      MORTGAGE LOANS; REPURCHASE OR SUBSTITUTION OF MORTGAGE LOANS..........  12
      Section 3.1.    Seller Representations and Warranties Concerning the
                      Mortgage Loans.......................................  12
      Section 3.2.    Additional Seller Representations and Warranties.....  16
      Section 3.3.    Repurchases and Substitutions in the Event of Breach
                      of Seller Representations and Warranties.............  18

   ARTICLE 4. COVENANTS....................................................  19
      Section 4.1.    Cooperation..........................................  19

```
    Section 4.2.    Representations, Warranties, Covenants and
                    Indemnities..............................................    19
    Section 4.3.    Delivery of Documents....................................    19
    Section 4.4.    Consents and Approvals...................................    19
    Section 4.5.    Confidentiality..........................................    20

ARTICLE 5. CONDITIONS TO PURCHASE........................................    20
    Section 5.1.    Required Documents.......................................    20
    Section 5.2.    Correctness of Representations and Warranties............    20
    Section 5.3.    Compliance With Conditions...............................    20
    Section 5.4.    Costs....................................................    21

ARTICLE 6. SALE PURSUANT TO POOLING AND SERVICING AGREEMENT..............    21
    Section 6.1.    Seller's Consent to Assignment...........................    21
    Section 6.2.    Indemnification..........................................    21

ARTICLE 7. MISCELLANEOUS PROVISIONS......................................    22
    Section 7.1.    Amendment................................................    22
    Section 7.2.    Recordation of Agreement.................................    22
    Section 7.3.    Governing Law............................................    23
    Section 7.4.    General Interpretive Principles..........................    23
</TABLE>

                                       i



<PAGE>

<TABLE>
<S>                                                                           <C>
    Section 7.5.    Notices..................................................    23
    Section 7.6.    Severability of Provisions...............................    24
    Section 7.7.    Exhibits.................................................    24
    Section 7.8.    Counterparts; Successors and Assigns.....................    24
    Section 7.9.    Effect of Headings.......................................    25
    Section 7.10.   Other Agreements Superseded..............................    25
    Section 7.11.   Intention of the Parties.................................    25
    Section 7.12.   Nonsolicitation..........................................    25
    Section 7.13.   Attorneys' Fees..........................................    26
    Section 7.14.   Security Interest........................................    26
    Section 7.15.   Covenant Not to Place Purchaser or Trust Into
                    Bankruptcy...............................................    27
</TABLE>

                                       ii



<PAGE>

                                    EXHIBITS

Exhibit A    CONTENTS OF MORTGAGE FILE

Exhibit B    TERM SHEET

Exhibit C    CONFIDENTIAL PRICING SUPPLEMENT

                                      iii
```

<PAGE>

Exhibit 4.7

## MORTGAGE LOAN PURCHASE AND SALE AGREEMENT

THIS MORTGAGE LOAN PURCHASE AND SALE AGREEMENT dated as of December 28, 2005 is among WaMu Asset Acceptance Corp., a Delaware corporation, as purchaser, and Washington Mutual Mortgage Securities Corp., a Delaware corporation, as seller.

### PRELIMINARY STATEMENT

WHEREAS, in reliance upon the representations, warranties and covenants of the Seller contained here, the Purchaser desires to purchase from the Seller, from time to time, and the Seller desires to sell to the Purchaser, from time to time, certain residential first lien mortgage loans, subject to the terms and conditions of this Agreement, without recourse;

WHEREAS, the Purchaser and the Seller desire to prescribe in this Agreement the manner of sale by the Seller and purchase by the Purchaser of such mortgage loans; and

WHEREAS, following each purchase of mortgage loans from the Seller, the Purchaser intends to effect a Sale (as defined below) with respect to those mortgage loans pursuant to a Pooling and Servicing Agreement (as defined below).

NOW, THEREFORE, the Purchaser and the Seller agree as follows:

### ARTICLE 1.

### DEFINITIONS

Whenever used herein, the following words and phrases, unless the context otherwise requires, shall have the following meanings:

Agreement: This Mortgage Loan Purchase and Sale Agreement, including all exhibits, attachments and schedules hereto, and all amendments hereof and supplements hereto.

Appraised Value: With respect to any (i) Mortgage Loan that is not a Streamlined Mortgage Loan or ROV Mortgage Loan, the lesser of (a) the value set forth on the appraisal made in connection with the origination of such Mortgage Loan as the value of the related Mortgaged Property and (b) the purchase price paid for the Mortgaged Property; provided, however, that if such Mortgage Loan was originated in connection with the refinance of a mortgage loan, the Appraised Value shall be the value set forth on the appraisal made in connection with the origination of such Mortgage Loan as the value of the related Mortgaged Property; (ii) ROV Mortgage Loan, the lesser of (a) the value set forth on the residential appraisal review made in connection with the origination of such Mortgage Loan as the value of the related Mortgaged Property and (b) the purchase price paid for the Mortgaged Property; provided,

<PAGE>

however, that if such ROV Mortgage Loan was originated in connection with the refinance of a mortgage loan, the Appraised Value shall be the value set forth on the residential appraisal review made in connection with the origination of such ROV Mortgage Loan as the value of the related Mortgaged Property; and (iii) Streamlined Mortgage Loan, the value set forth in the appraisal made in connection with the origination of the mortgage loan being refinanced.

mortgage creating a security interest in favor of the originator of the Cooperative Loan in the related Cooperative Stock.

     Seller: Washington Mutual Mortgage Securities Corp., and its assigns and successors in interest.

     Seller Officer's Certificate: A certificate signed by the Chairman of the Board, the President, any Vice President or the Treasurer of the Seller.

     Seller's Information: As defined in Section 6.2(a).

7

<PAGE>

     Servicer: As defined in the related Pooling and Servicing Agreement.

     Servicing Fee Rate: With respect to each Mortgage Loan, the percentage set forth as such for such Mortgage Loan in the Mortgage Loan Schedule.

     Streamlined Mortgage Loan: A Mortgage Loan originated in connection with the refinance of a mortgage loan pursuant to the streamlined loan documentation program then in effect of the originator of such Mortgage Loan.

     Substitute Mortgage Loan: A Mortgage Loan that is substituted for another Mortgage Loan pursuant to and in accordance with the provisions of Section 2.4 or 3.3.

     Substitution Price: With respect to all Reacquired Mortgage Loans for which Substitute Mortgage Loans are substituted by the Seller on a specific date pursuant to Section 2.4 or 3.3, an amount equal to the sum of (i) the excess, if any, of the aggregate Principal Balance of the Reacquired Mortgage Loans over the aggregate Principal Balance of the Substitute Mortgage Loans, in each case, as of the date of substitution, (ii) one month's interest at the weighted average Net Rate for the Reacquired Mortgage Loans on an amount equal to the sum of (A) the excess amount described in clause (i) above and (B) the aggregate amount of all principal due but unpaid on the Reacquired Mortgage Loans under the terms of the related Mortgage Notes to the extent not covered by an advance by the Servicer pursuant to the related Pooling and Servicing Agreement, (iii) the aggregate amount of all principal and interest due but unpaid on the Reacquired Mortgage Loans under the terms of the related Mortgage Notes (whether or not covered by an advance by the Servicer pursuant to the related Pooling and Servicing Agreement), (iv) the aggregate amount of all unreimbursed advances of reimbursable expenses made by the Servicer with respect to such Reacquired Mortgage Loans pursuant to the related Pooling and Servicing Agreement and (v) the aggregate amount of all costs and damages incurred by the Purchaser or its transferee in connection with any violations by such Reacquired Mortgage Loans of any predatory and abusive lending laws, to the extent such costs and damages result from a breach of the representation and warranty made by such Seller pursuant to Section 3.1(vii); provided, however, that to the extent that such costs and damages constitute a set-off against the principal balance of the related Reacquired Mortgage Loan, such costs and damages will not be paid pursuant to this clause (v), and the amount paid pursuant to clause (i) above will be calculated without regard to such set-off.

     Term Sheet: A term sheet with respect to the Mortgage Loans purchased by the Purchaser from the Seller on a Closing Date, in substantially the form attached hereto as Exhibit B.

     Trust: The trust created in connection with the related Pooling and Servicing Agreement.

Trustee: As defined in the related Pooling and Servicing Agreement.

Underwriting Standards: For each Mortgage Loan, the published underwriting standards of the Seller, or, if such Mortgage Loan was underwritten pursuant to underwriting standards

8

<PAGE>

other than the published underwriting standards of the Seller, then such other underwriting standards.

VA: The Department of Veterans Affairs (formerly known as the Veterans Administration) and any successor thereto.

ARTICLE 2.

SALE AND CONVEYANCE OF MORTGAGE LOANS;
PAYMENT OF PURCHASE PRICE;
DELIVERY OF MORTGAGE FILES;

Section 2.1. Sale and Conveyance of Mortgage Loans; Payment of Purchase Price

(a) On each Closing Date, upon the receipt of the applicable Purchase Price, the Seller shall deliver to the Purchaser a Term Sheet and a Confidential Pricing Supplement. As set forth in such Term Sheet, the Seller sells, transfers, assigns, sets over, and conveys to the Purchaser, without recourse, but subject to the representations, warranties, terms and provisions of this Agreement and such Term Sheet, all the right, title, and interest of the Seller in and to the Mortgage Loans described in the Mortgage Loan Schedule attached to such Term Sheet.

(b) In payment of the purchase price for each of the Mortgage Loans pursuant to Section 2.1(a) and the applicable Term Sheet, and upon the terms and conditions of this Agreement, on the related Closing Date the Purchaser shall pay to the Seller by wire transfer of immediately available funds the applicable Purchase Price for each Mortgage Loan purchased on such Closing Date.

(c) As of each Closing Date, the Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased on such Closing Date all Monthly Payments due after the applicable Cut-Off Date, and all other payments and recoveries of principal and interest received on or after such Cut-Off Date, other than payments that were due on or prior to such Cut-Off Date.

(d) On or before each Closing Date, the Seller shall deliver to the Purchaser with the related Term Sheet the related Mortgage Loan Schedule, which shall be in hard copy or "read-only" electronic format (as reasonably acceptable to the Seller and the Purchaser).

Section 2.2. Delivery of Mortgage Files

The Seller shall deliver or cause to be delivered to the Purchaser or its designee (which may be a Custodian), with respect to each Mortgage Loan sold by the Seller hereunder, on or before the related Closing Date, at the Seller's expense, each of the items or documents with respect to such Mortgage Loan required to be included in the Mortgage File pursuant to the definition thereof.

9

\<PAGE\>

Section 2.3. Recordation of Mortgages and Assignments of Mortgages

With respect to each Mortgage Loan (other than any Mortgage Loan for which a Payoff has been made after the related Cut-Off Date and prior to the related Closing Date), in instances where, due to a delay on the part of the recording office, any Recording Documents are not included in the Mortgage File delivered to the Purchaser or its designee on or before the related Closing Date, the Seller shall transmit the Recording Documents to the Purchaser or its designee within 270 days after the related Closing Date. In instances where, due to a delay on the part of the recording office where any such Recording Documents have been delivered for recordation, the Recording Documents cannot be delivered to the Purchaser or its designee within 270 days after such Closing Date, the Seller shall deliver to the Purchaser or its designee within such time period a Seller Officer's Certificate stating the date by which the Seller expects to receive such Recording Documents from the applicable recording office. In the event that Recording Documents have still not been received by the Seller and delivered to the Purchaser or its designee by the date specified in its previous Seller Officer's Certificate delivered to the Purchaser or its designee, the Seller shall deliver to the Purchaser or its designee by such date an additional Seller Officer's Certificate stating a revised date by which the Seller expects to receive the applicable Recording Documents. This procedure shall be repeated until the Recording Documents have been received by the Seller and delivered to the Purchaser or its designee.

Section 2.4. Repurchases of and Substitutions for Defective Mortgage Loans

(a) Upon receipt of notice from the Purchaser that any document, required to be included (pursuant to the definition of "Mortgage File") in the Mortgage File delivered to the Purchaser or its designee with respect to a Mortgage Loan sold by the Seller hereunder, was not included therein or has not been executed, the Seller shall correct or cure such defect within 60 days from the date the Seller receives notice thereof or, if such defect cannot be corrected or cured within such 60-day period, the Seller shall, not later than the expiration of such 60-day period, either (a) repurchase such Mortgage Loan from the Purchaser or its transferee at the Repurchase Price or (b) within the three-month period commencing on the related Closing Date (or within the two-year period commencing on such Closing Date if the related Mortgage Loan is a "defective obligation" within the meaning of Section 860G(a)(4)(B)(ii) of the Code and Treasury Regulation Section 1.860G-2(f)), substitute for such Mortgage Loan one or more Substitute Mortgage Loans each of which is a "qualified replacement mortgage" (as defined in the Code); provided, however, that in the event that such defect consists solely of the failure of the Seller to deliver any Recording Document with respect to such Mortgage Loan, due to a delay on the part of the recording office, then the Seller shall not be required to repurchase or substitute for such Mortgage Loan. If such defect would cause the Mortgage Loan to be other than a "qualified mortgage" (as defined in the Code), then notwithstanding the previous sentence, the repurchase or substitution must occur within the sooner of (i) 90 days from the date the defect was discovered by the Seller, the Purchaser or any other party to the related Pooling and Servicing Agreement or (ii) in the case of substitution, two years from the related Closing Date.

(b) Any number of Substitute Mortgage Loans may be substituted for any number of Reacquired Mortgage Loans, subject to the limitations described in the next sentence. With

10

<PAGE>

respect to the Mortgage Loans substituted on any date, (i) the aggregate Principal Balance of the Substitute Mortgage Loans shall not exceed the aggregate Principal Balance of the Reacquired Mortgage Loans, (ii) each Substitute Mortgage Loan shall mature no later than, and not more than two years earlier than, the weighted average date of maturity of the Reacquired Mortgage Loans, (iii) each Substitute Mortgage Loan shall have a Current Loan-to-Value Ratio equal to or less than the weighted average Current Loan-to-Value Ratio of the Reacquired Mortgage Loans, (iv) each Substitute Mortgage Loan shall have a Mortgage Interest Rate on the date of substitution equal to or no more than 1 percentage point greater than the weighted average Mortgage Interest Rate of the Reacquired Mortgage Loans, (v) if the Reacquired Mortgage Loans do not provide for any payments of principal during an initial period, each Substitute Mortgage Loan also shall not provide for payments of principal during such initial period and (vi) if the Reacquired Mortgage Loans are ARM Loans, then each Substitute Mortgage Loan shall (1) if applicable, have an Initial Interest Rate Adjustment Date occurring on approximately the same date as, but not earlier than, the weighted average Initial Interest Rate Adjustment Date of the Reacquired Mortgage Loans and interest rate adjustments thereafter at the same frequency as the Reacquired Mortgage Loans, (2) if applicable, have a Margin, Rate Ceiling and Rate Floor equal to or greater than the weighted average Margin, Rate Ceiling and Rate Floor of the Reacquired Mortgage Loans, (3) have the same terms (other than the terms referenced in clauses (1) and (2) above) for adjusting the Mortgage Interest Rate as the Reacquired Mortgage Loans and (4) if applicable, have the same terms for adjusting the amount of the minimum monthly payment as the Reacquired Mortgage Loans. Furthermore, the Seller shall be deemed to have made as of the date of substitution the representations and warranties set forth in Section 3.1 as to such Substitute Mortgage Loan (except that references to "Closing Date" and "Cut-Off Date" in such Section 3.1 shall be deemed to be references to the date of substitution). In addition, a Substitute Mortgage Loan shall not be a High Cost Loan or Covered Loan (as such terms are defined in the Standard & Poor's LEVELS(R) Glossary in effect on the date of substitution, with such exceptions thereto as the Purchaser and Standard & Poor's Ratings Services may reasonably agree). A Substitute Mortgage Loan may be substituted for a defective Mortgage Loan that is itself a Substitute Mortgage Loan.

       (c) In connection with the substitution of one or more Substitute Mortgage Loans for one or more Reacquired Mortgage Loans on any date, the Seller shall pay to the Purchaser the Substitution Price for such Reacquired Mortgage Loans.

       (d) Concurrently with each such substitution, the Seller shall deliver to and deposit with, or cause to be delivered to and deposited with, the Purchaser or its designee the Mortgage File for each Substitute Mortgage Loan. Upon such substitution, the Substitute Mortgage Loan shall be subject to the terms of this Agreement, to the extent applicable (including, without limitation, the Seller's obligations with respect to the Substitute Mortgage Loan pursuant to this Section 2.4 and Sections 2.3 and 3.3). The Seller and the Purchaser shall amend the Mortgage Loan Schedule in a timely fashion to delete all repurchased Mortgage Loans and Reacquired Mortgage Loans and add all Substitute Mortgage Loans.

       (e) The Seller shall pay any Repurchase Price or Substitution Price by such method as is specified by the Purchaser in writing.

11

<PAGE>

       (f) With respect to each repurchased Mortgage Loan or Reacquired

Mortgage Loan, the Seller shall own and be entitled to receive all scheduled payments due after the date of repurchase or substitution, as applicable, any Curtailments received in or after the calendar month of repurchase or substitution, as applicable, and any Payoff received after the 14th day of the calendar month of repurchase or substitution, as applicable; and with respect to each Substitute Mortgage Loan, the Seller shall own and be entitled to receive all payments due under the related Mortgage Note on or before the date of substitution. Any such payments received by the Purchaser or its transferee shall promptly be remitted by the Purchaser to the Seller. With respect to each Substitute Mortgage Loan, the Purchaser shall own and be entitled to receive all scheduled payments due after the date of substitution, any Curtailments received in or after the calendar month of substitution, and any Payoff received after the 14th day of the calendar month of substitution. Any such payments received by the Seller shall promptly be remitted by the Seller to the Purchaser or its transferee.

(g) Upon receipt by the Purchaser of the Repurchase Price or the Substitution Price, as applicable, and (in the case of a substitution for a Mortgage Loan pursuant to this Section 2.4 or Section 3.3) upon receipt by the Purchaser of such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in the Purchaser title to any Substitute Mortgage Loan, the Purchaser shall release to the Seller the Mortgage File for the repurchased Mortgage Loan or the Reacquired Mortgage Loan, as applicable, and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as shall be necessary to vest in the Seller title to such Mortgage Loan.

(h) The Seller shall pay all costs and expenses incurred in connection with any repurchase or substitution by the Seller made pursuant to this Section 2.4 or Section 3.3.

(i) It is understood and agreed that the obligations of the Seller set forth in this Section 2.4 constitute the sole remedies available to the Purchaser or its transferee respecting the Seller's failure to include in the Mortgage File for a Mortgage Loan sold by the Seller the documents required to be included therein.

ARTICLE 3.

REPRESENTATIONS AND WARRANTIES OF
THE SELLER CONCERNING THE MORTGAGE LOANS;
REPURCHASE OR SUBSTITUTION OF MORTGAGE LOANS

Section 3.1. Seller Representations and Warranties Concerning the Mortgage Loans

The Seller hereby represents and warrants to and covenants to and agrees with the Purchaser that, as to each Mortgage Loan sold by the Seller hereunder, as of the related Cut-Off Date unless otherwise indicated, subject in all cases (including, without limitation, clauses (iv), (xi) and (xviii)) to such exceptions, if any, as are set forth on Schedule III to the related Term Sheet:

12

<PAGE>

    (i) The information set forth in the Mortgage Loan Schedule delivered on the Closing Date was true and correct in all material respects at the date or dates respecting which such information is furnished;

    (ii) As of the Closing Date, each Mortgage relating to a Mortgage Loan that is not a Cooperative Loan is a valid and enforceable (except as such

enforceability may be limited by laws affecting the enforcement of creditors' rights generally and principles of equity) first lien on an unencumbered estate in fee simple or (if the related Mortgage Loan is secured by the interest of the Mortgagor as a lessee under a ground lease) leasehold estate in the related Mortgaged Property subject only to (a) liens for current real property taxes and special assessments; (b) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording such Mortgage, such exceptions appearing of record being acceptable to mortgage lending institutions generally or specifically reflected in the appraisal obtained in connection with the origination of the Mortgage Loan; (c) exceptions set forth in the title insurance policy relating to such Mortgage, such exceptions being acceptable to mortgage lending institutions generally; and (d) other matters to which like properties are commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Mortgage;

(iii) Immediately upon the transfer and assignment contemplated herein, the Purchaser shall have good title to, and will be the sole legal owner of, each Mortgage Loan, free and clear of any encumbrance or lien (other than any lien under this Agreement);

(iv) Except as set forth on Schedule III to the Term Sheet, if applicable, as of the day prior to the Cut-Off Date, all payments due on each Mortgage Loan had been made and no Mortgage Loan had been delinquent (i.e., was more than 30 days past due) more than once in the preceding 12 months and any such delinquency lasted for no more than 30 days;

(v) As of the Closing Date, there is no offset, defense or counterclaim to any Mortgage Note, including the obligation of the Mortgagor to pay the unpaid principal or interest on such Mortgage Note, except to the extent that the Buydown Agreement for a Buydown Loan forgives certain indebtedness of a Mortgagor;

(vi) As of the Closing Date, each Mortgaged Property is free of damage and in good repair, ordinary wear and tear excepted;

(vii) Each Mortgage Loan at the time it was made complied with all applicable local, state and federal laws, including, without limitation, usury, equal credit opportunity, disclosure and recording laws, and predatory and abusive lending laws applicable to the originating lender;

(viii) Each Mortgage Loan was originated by (a) the Seller, (b) a savings association, savings bank, bank, credit union, insurance company or similar institution

13

<PAGE>

which is supervised and examined by a federal or state authority or (c) a mortgagee approved by the FHA;

(ix) As of the Closing Date, each Mortgage Loan that is not a Cooperative Loan is covered by an ALTA form or CLTA form of mortgagee title insurance policy, or other form of policy of insurance acceptable to Fannie Mae or Freddie Mac as of the origination date of such Mortgage Loan, which has been issued by, and is the valid and binding obligation of, a title insurer which, as of the origination date of such Mortgage Loan, was qualified to do business in the state in which the related Mortgaged Property is located. Such policy insures the originator of the Mortgage Loan and its successors and assigns as to the first priority lien of the

Mortgage in the original principal amount of the Mortgage Loan subject to the exceptions set forth in such policy. Such policy is in full force and effect and inures to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement and no claims have been made under such policy, and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything which would impair the coverage of such policy;

(x) Except as set forth on Schedule III to the Term Sheet, if applicable, each Mortgage Loan with both (a) an Original Loan-to-Value Ratio and (b) a Current Loan-to-Value Ratio in excess of 80% was covered, as of the Cut-Off Date, by a Primary Insurance Policy or an FHA insurance policy or a VA guaranty, and such policy or guaranty is valid and remains in full force and effect;

(xi) The Mortgage Note related to (a) each Mortgage Loan (other than a Cooperative Loan) requires the related Mortgagor to maintain a policy of hazard insurance, with extended coverage in an amount which is not less than the original principal balance of such Mortgage Loan, except in cases in which such original principal balance exceeds the value of the improvements to the Mortgaged Property, and (b) each Mortgage Loan (other than a Cooperative Loan) with respect to which any part of any improvement to the related Mortgaged Property is located in a federally designated special flood hazard area and in a community which participates in the National Flood Insurance Program at the time of origination of such Mortgage Loan, requires the related Mortgagor to maintain a policy of flood insurance;

(xii) As of the Closing Date, all taxes, governmental assessments, insurance premiums, leasehold payments or ground rents that have become due and payable with respect to each Mortgaged Property have been paid or an escrow of funds sufficient to pay them has been established;

(xiii) As of the Closing Date, each insurer issuing a Primary Insurance Policy holds a rating acceptable to the Rating Agencies;

(xiv) Each Mortgage (exclusive of any riders thereto) was documented by appropriate Fannie Mae/Freddie Mac mortgage instruments in effect at the time of origination, or other instruments approved by the Seller;

14

<PAGE>

(xv) As of the Closing Date, the Mortgaged Property securing each Mortgage relating to a Mortgage Loan that is not a Cooperative Loan is improved with a one- to four-family dwelling unit, including units in a duplex, triplex, fourplex, condominium project, townhouse, a planned unit development or a de minimis planned unit development;

(xvi) As of the Closing Date, each Mortgage and Mortgage Note is the legal, valid and binding obligation of the maker thereof and is enforceable in accordance with its terms, except only as such enforceability may be limited by laws affecting the enforcement of creditors' rights generally and principles of equity;

(xvii) As of the date of origination, as to Mortgaged Properties which are units in condominiums or planned unit developments, all of such units met the applicable Underwriting Standards, are located in a condominium or planned unit development projects which have received Fannie Mae or Freddie Mac approval, or are approvable by Fannie Mae or Freddie Mac or have otherwise been approved by the Seller;

     (xviii) Except as set forth on Schedule III to the Term Sheet, if applicable, no Mortgage Loan is a Buydown Loan;

     (xix) Prior to origination or refinancing, an appraisal of each Mortgaged Property was made by an appraiser on a form satisfactory to Fannie Mae or Freddie Mac;

     (xx) The Mortgage Loans have been underwritten substantially in accordance with the applicable Underwriting Standards;

     (xxi) All of the Mortgage Loans have due-on-sale clauses; however, the due on sale provisions may not be exercised at the time of a transfer if prohibited by law or the terms of the related Mortgage Note;

     (xxii) The Seller used no adverse selection procedures in selecting the Mortgage Loans from among the outstanding mortgage loans of the same type originated or purchased by it which were available for sale to the Purchaser and as to which the representations and warranties in this Section 3.1 could be made;

     (xxiii) If such Mortgage Loan is a Cooperative Loan, the Cooperative Stock that is pledged as security for the Cooperative Loan is held by a person as a tenant-stockholder (as defined in Section 216 of the Code) in a cooperative housing corporation (as defined in Section 216 of the Code);

     (xxiv) If such Mortgage Loan is a Cooperative Loan, it is secured by a valid, subsisting and enforceable (except as such enforceability may be limited by laws affecting the enforcement of creditors' rights generally and principles of equity) perfected first lien and security interest in the related Cooperative Stock, subject only to (a) liens of the Cooperative for unpaid assessments representing the Mortgagor's pro rata share of the Cooperative's payments for its blanket mortgage, current and future real property taxes,

15

<PAGE>

insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject, and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement;

     (xxv) With respect to any Mortgage Loan as to which an affidavit has been delivered by the Seller to the Purchaser or its assignee certifying that the original Mortgage Note is a Destroyed Mortgage Note, if such Mortgage Loan is subsequently in default, the enforcement of such Mortgage Loan or of the related Mortgage will not be materially adversely affected by the absence of the original Mortgage Note (or portion thereof, as applicable);

     (xxvi) Each Mortgage Loan constitutes a "qualified mortgage" under Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9), without reliance on the provisions of Treasury Regulation Section 1.860G-2(a)(3) or 1.860G-2(f)(2) or any other provision that would allow a Mortgage Loan to be treated as a "qualified mortgage" notwithstanding its failure to meet the requirements of Section 860G(a)(3)(A) of the Code and Treasury Regulation Section 1.860G-2(a)(1), (2), (4), (5), (6), (7) and (9);

     (xxvii) No Mortgage Loan is a High Cost/Covered Loan, and no Mortgage

Loan originated during the period of October 1, 2002 through March 6, 2003 is governed by the Georgia Fair Lending Act;

(xxviii) No Mortgage Loan is subject to the Home Ownership and Equity Protection Act of 1994 or Section 226.32 of Regulation Z, is a "high-cost" loan or a "predatory" loan as defined under any state or local law or regulation applicable to the originator of such Mortgage Loan or which would result in liability to the purchaser or assignee of such Mortgage Loan under any predatory or abusive lending law, or, without limiting the generality of the foregoing, is a "covered" loan under the laws of the states of California, Colorado or Ohio; and

(xxix) No Mortgage Loan has a Closing Date Loan-to-Value Ratio greater than 100%.

Section 3.2. Additional Seller Representations and Warranties

The Seller hereby represents and warrants to the Purchaser as of each Closing Date on which the Seller sells Mortgage Loans hereunder, and with respect to such Mortgage Loans, as of such Closing Date:

(i) The Seller is a corporation, duly organized, validly existing and in good standing under the laws of the State of Delaware.

(ii) The Seller has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in the states where the

16

<PAGE>

Mortgaged Properties are located if the laws of such states require licensing or qualification in order to conduct business of the type conducted by the Seller and to the extent necessary to ensure the enforceability of each Mortgage Loan. The Seller has the corporate power and authority to hold each Mortgage Loan, to sell each Mortgage Loan, to enter into, execute and deliver this Agreement, the Term Sheet, the Confidential Pricing Supplement and all documents and instruments executed and delivered pursuant hereto and to perform its obligations in accordance therewith. The execution, delivery and performance of this Agreement by the Seller and the consummation of the transactions contemplated hereby, including, without limitation, the repurchase obligations herein contained, have been duly and validly authorized. This Agreement, the Term Sheet, the Confidential Pricing Supplement and all other documents and instruments contemplated hereby to which the Seller is a party, in each case assuming due authorization, execution and delivery by the Purchaser, evidence the valid, binding and enforceable obligations of the Seller, subject as to enforceability, (i) to bankruptcy, insolvency, receivership, conservatorship, reorganization, arrangement, moratorium, and other laws of general applicability relating to or affecting creditor's rights, and (ii) to general principles of equity, whether such enforcement is sought in a proceeding in equity or at law. All requisite corporate action has been taken by the Seller to make this Agreement valid and binding upon the Seller in accordance with its terms.

(iii) No consent, approval, authorization, or order of any court or governmental agency or body relating to the transactions contemplated by this Agreement and the transfer of legal title to the Mortgage Loans to the Purchaser, is required as to the Seller or, if required, such consent, approval, authorization, or order has been or will, prior to the applicable Closing Date, be obtained, except for any recordation of Mortgages or

assignments of Mortgages or filing of UCC financing statements or amendments thereto to or for the benefit of the Purchaser pursuant to this Agreement.

(iv) The consummation of the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Mortgage Loans to the Purchaser pursuant to this Agreement and the fulfillment of or compliance with the terms and conditions of this Agreement, are in the ordinary course of business of the Seller and will not (i) result in the breach of any term or provision of the certificate of incorporation or by-laws of the Seller, (ii) result in the breach of any term or provision of, or conflict with or constitute a default under, or result in the acceleration of any obligation under, any material agreement, indenture, loan or credit agreement or other instrument to which the Seller or its property is subject or (iii) result in the violation of any law, rule, regulation, order, judgment, or decree to which the Seller or its property is subject.

(v) There is no action, suit, proceeding or investigation pending or, to the best of the Seller's knowledge, threatened, against the Seller which, either in any one instance or in the aggregate, is likely, in the Seller's judgment, to result, in any material impairment of the right or ability of the Seller to carry on its business substantially as now conducted, or which would draw into question the validity of this Agreement or the Mortgage Loans, or of any action taken or to be taken in connection with the obligations

17

<PAGE>

of the Seller contemplated herein or therein, or which would be likely to impair materially the ability of the Seller to perform its obligations hereunder or thereunder.

(vi) The Seller is a U.S. Department of Housing and Urban Development ("HUD") approved mortgagee pursuant to Section 203 of the National Housing Act of 1934, as amended. No event has occurred, including but not limited to a change in insurance coverage, which would make the Seller unable to comply with HUD eligibility requirements or which would require notification to HUD.

(vii) The Seller is not in violation of, and the execution and delivery of this Agreement by the Seller and its performance and compliance with the terms of this Agreement will not constitute a violation with respect to, any order or decree of any court or any order or regulation of any federal, state, municipal or governmental agency having jurisdiction over the Seller or its assets, which violation might have consequences that would materially and adversely affect the condition, financial or otherwise, or the operations, of the Seller or its assets or might have consequences that would materially and adversely affect the performance of its obligations and duties hereunder.

(viii) Upon payment of the Purchase Price by the Purchaser, in the event that the Seller retains record title to a Mortgage, the Seller shall retain such record title to such Mortgage solely in trust for the Purchaser as owner thereof.

Section 3.3. Repurchases and Substitutions in the Event of Breach of Seller Representations and Warranties

(a) It is understood and agreed that the representations and

warranties set forth in Sections 3.1 and 3.2 shall survive the sale of Mortgage Loans by the Seller to the Purchaser and shall inure to the benefit of the Purchaser, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or assignment of Mortgage.

(b) Upon discovery by the Seller or the Purchaser of a breach of any of the representations and warranties set forth in Section 3.1 (in the case of a breach of the representation set forth in clause (xxix) of Section 3.1, as based on a determination of the applicable Closing Date Loan-to-Value Ratio using such evidence as is reasonably designed to approximate the value of the applicable Mortgaged Property as of the related Closing Date) that materially and adversely affects the value of any Mortgage Loan or the interests of the Purchaser in such Mortgage Loan, the party discovering such breach shall give prompt written notice to the other. Any breach of the representation set forth in clause (xxvii) or clause (xxviii) of Section 3.1 shall be deemed to materially and adversely affect the value of the related Mortgage Loan or the interests of the Purchaser in the related Mortgage Loan. Within 90 days of its discovery of breach or its receipt of notice of breach from the Purchaser, the Seller shall repurchase from the Purchaser or its transferee the affected Mortgage Loan or Mortgage Loans or any property acquired in respect thereof, or substitute one or more Substitute Mortgage Loans therefor, unless it has cured such breach in all material respects. Any such repurchase or substitution shall be made in the manner and within the time limits set forth in Section 2.4. If such breach would

18

<PAGE>

cause the Mortgage Loan to be other than a "qualified mortgage" (as defined in the Code), then notwithstanding the previous sentence, the repurchase or substitution must occur within the sooner of (i) 90 days from the date the defect was discovered by the Seller, the Purchaser or any other party to the related Pooling and Servicing Agreement or (ii) in the case of substitution, two years from the related Closing Date.

(c) It is understood and agreed that the obligations of the Seller set forth in this Section 3.3 constitute the sole remedies available to the Purchaser or its transferee respecting a breach of the representations and warranties by the Seller set forth in Section 3.1.

(d) In addition to such cure, repurchase or substitution obligation, the Seller shall indemnify the Purchaser and hold it harmless against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from the defense of any claim against the Purchaser by a third party resulting from a breach of the representations and warranties made by the Seller in this Article 3.

ARTICLE 4.

COVENANTS

Section 4.1. Cooperation

Each of the Seller and the Purchaser shall cooperate fully with each other and their respective counsel and other representatives and advisors in connection with the steps required to be taken as part of their respective obligations under this Agreement.

Section 4.2. Representations, Warranties, Covenants and Indemnities

Each representation, warranty, covenant and indemnity made by the Seller in

this Agreement as of each Closing Date shall survive the termination of this Agreement.

Section 4.3. Delivery of Documents

On the dates specified herein, each party shall deliver to the appropriate persons specified herein all documents and instruments provided for hereunder.

Section 4.4. Consents and Approvals

The Seller shall obtain, at its sole cost and expense, prior to each Closing Date, all consents and approvals required by law or pursuant to contract to consummate the transactions contemplated hereby. All such consents will be obtained without any cost or expense to the Purchaser and will be obtained without any modification in the terms of any of the agreements relating to the Mortgage Loans or the imposition of any provisions or conditions on the Purchaser.

19

<PAGE>

Section 4.5. Confidentiality

Each party understands that certain information which has been furnished and will be furnished in connection with this transaction is confidential and proprietary, and each party agrees that, with respect to such information that is marked or identified as confidential or proprietary, such party will maintain the confidentiality of such information and will not without the consent of the party furnishing such information disclose it to others or use it except in connection with the transactions contemplated by this Agreement. The parties agree that the completed Confidential Pricing Supplement is confidential, and that the Term Sheet, this Agreement and their other exhibits, including the Mortgage Loan Schedule, and the underwriting guidelines of the Seller are not confidential. Information also shall not be deemed confidential or proprietary for these purposes if the information is generally known in the industry concerning a party, if it has been disclosed to the other party by a third party, or if it is required to be disclosed by law or by regulatory or judicial process.

ARTICLE 5.

CONDITIONS TO PURCHASE

The obligations of the Purchaser to purchase any Mortgage Loans on any Closing Date are subject to the satisfaction, as applicable, prior to or on such Closing Date (or on such other date as expressly provided for herein) of the following conditions, any of which may be waived in writing by Purchaser:

Section 5.1. Required Documents

On or before the Closing Date for the initial purchase of Mortgage Loans hereunder, each party hereto shall have received fully executed counterpart originals of this Agreement. On each Closing Date, the Purchaser and the Seller shall furnish to the other party fully executed counterpart originals of the relevant Term Sheet and Confidential Pricing Supplement.

Section 5.2. Correctness of Representations and Warranties

All of the representations and warranties of the Seller under this Agreement shall be true and correct as of such Closing Date (except as otherwise expressly provided for herein), and no event shall have occurred which, with

notice or the passage of time, would constitute a default under this Agreement.

    Section 5.3. Compliance With Conditions

    All other terms and conditions of this Agreement to be performed by the Seller on or prior to such Closing Date (or such other date as expressly provided for herein) shall have been duly complied with and performed in all respects.

                                   20

<PAGE>

    Section 5.4. Costs

    The Seller shall pay all costs, fees and expenses incurred in connection with the transfer and delivery of the Mortgage Loans sold by the Seller under this Agreement for the Seller's accountants, attorneys and other service providers. In addition, with respect to each Pooling and Servicing Agreement, the Seller shall (a) reimburse the Purchaser for all reasonable expenses incurred by the Purchaser in connection with the issuance of the related Certificates and (b) pay to the Purchaser a securitization fee, to be agreed upon separately.

                                ARTICLE 6.

                 SALE PURSUANT TO POOLING AND SERVICING AGREEMENT

    Section 6.1. Seller's Consent to Assignment

    The Seller hereby consents to the assignment by the Purchaser to a Trust, pursuant to a Pooling and Servicing Agreement, of all of the Purchaser's rights under (i) this Agreement, to the extent that this Agreement relates to Mortgage Loans transferred by the Purchaser to such Trust, and (ii) the Term Sheet with respect to such Mortgage Loans. The Seller agrees that its obligations hereunder and under the related Term Sheet may be enforced by the Trustee or the Servicer for such Trust.

    Section 6.2. Indemnification

        (a) The Seller (i) agrees to indemnify and hold harmless the Purchaser and the related Trust (each, an "Indemnified Party"), against any losses, claims, damages or liabilities to which such Indemnified Party may become subject, under the Securities Act of 1933, as amended, or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement of any material fact contained in the information provided by the Seller to the Purchaser with respect to the Seller's origination and underwriting criteria, the regulatory status of the Seller and its affiliates (other than the Purchaser and the Trust), and the characteristics of the Mortgage Loans sold by the Seller on the related Closing Date (such information, the "Seller's Information") and included in the prospectus or the prospectus supplement or other disclosure document prepared in connection with the related Sale (collectively, the "Disclosure Documents") and (ii) will reimburse each Indemnified Party for any legal or other expenses reasonably incurred by such Indemnified Party in connection with investigating or defending any such loss, claim, damage, liability or action.

        (b) The Purchaser (i) will indemnify and hold harmless the Seller against any losses, claims, damages or liabilities to which the Seller may become subject, under the Securities Act of 1933, as amended, or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) (x) arise out of or are based upon any untrue statement of any material

fact contained in any Disclosure Document (other than an untrue statement of material fact contained in the Seller's Information) or (y) arise out of or are based upon the omission to state in any Disclosure Document a material fact required to be stated therein or

21

<PAGE>

necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading (unless such omission also constitutes an omission to state in the Seller's Information a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading) and (ii) will reimburse the Seller for any legal or other expenses reasonably incurred by the Seller in connection with investigating or defending any such loss, claim, damage, liability or action.

(c) In connection with each Sale, (i) the Seller agrees to execute an agreement pursuant to which the Seller will agree to indemnify each underwriter engaged in connection with such Sale against any losses, claims, damages or liabilities to which such underwriter may become subject, under the Securities Act of 1933, as amended, or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement of any material fact contained in the Seller's Information and included in any Disclosure Document, and (ii) the Purchaser agrees to make reasonable efforts to obtain indemnification satisfactory to the Seller with respect to any information provided by parties other than the Purchaser or an affiliate of the Purchaser and included in any Disclosure Document.

ARTICLE 7.

MISCELLANEOUS PROVISIONS

Section 7.1. Amendment

This Agreement may be amended from time to time by the Seller and the Purchaser solely by written agreement signed by the Seller and the Purchaser. If any provision of this Agreement or of a Confidential Pricing Supplement conflicts with any provision of a Term Sheet, the provision of such Term Sheet shall control. If any provision of this Agreement conflicts with any provision of a Confidential Pricing Supplement, the provision of this Agreement shall control.

Section 7.2. Recordation of Agreement

(a) To the extent necessary under applicable law to protect the interests of the Purchaser, this Agreement or a memorandum thereof is subject to recordation in all appropriate public offices for real property records in all the counties and other comparable jurisdictions in which any or all of the Mortgaged Properties are situated, and in any other appropriate public recording office or elsewhere, such recordation to be effected by the Seller at the Purchaser's expense upon direction of the Purchaser.

(b) The Seller agrees to execute or cause to be executed such documents and take or cause to be taken such actions as may be necessary to effect the intent of this Agreement, including without limitation the execution and delivery of instruments of further assurance and the execution and delivery of such other documents, and the taking of such other actions, as may be reasonably requested by the Purchaser.

<PAGE>

Section 7.3. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to the choice of law doctrine of such state (other than Section 5-1401 of the General Obligations Law).

Section 7.4. General Interpretive Principles

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(i) the terms defined in this Agreement include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(ii) accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(iii) references herein to "Articles," "Sections," "Subsections," "Paragraphs," and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs, and other subdivisions of this Agreement;

(iv) a reference to a subsection without further reference to a Section is a reference to such subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(v) the words "herein," "hereof," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(vi) the term "include" or "including" shall mean without limitation by reason of enumeration.

Section 7.5. Notices

All demands, notices, consents, waivers and other communications hereunder shall be in writing and shall be deemed to have been duly given if personally delivered, sent by telecopy, mailed by certified mail, return receipt requested and postage prepaid, or delivered by a nationally recognized overnight courier, to

(i) in the case of the Seller:

Washington Mutual Mortgage Securities Corp.
75 North Fairway Drive
Vernon Hills, Illinois 60061
Attention: Kim Jacobs, Vice President
Telephone: (847) 549-2372
Telecopy: (847) 549-2997

23